

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00076-CR

_____

CANDICE PUMPHREY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Hunt County, Texas
Trial Court No. CR0600438

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

## OPINION

Lance Sharp, a police officer with Texas A & M University at Commerce, grasped the right wrist of Candice Pumphrey to arrest her for disorderly conduct just outside the entrance to a large dance being held on campus.[1]  In response, Pumphrey "immediately started pulling away and jerking."  As Sharp kept his grasp on her wrist and attempted to move behind her to get her arms behind her, she "refused" his efforts, "actually turning in circles" to keep Sharp from securing her arms behind her back.  Sharp also described Pumphrey's actions as "twisting and squirming, doing everything she can to keep me from getting her hand behind her back to put her in handcuffs."  Sharp added that, when "they start twisting like that, you're going to get to the point where officer safety is a problem.  Normally in that type of situation we actually take the suspect to the ground"[2] to get control over them.

---

[1]The whole confrontation started when Pumphrey, while waiting to enter the dance, uttered some obscenities when told by a security guard that she could not take a camera in.  Those obscenities were directed at her boyfriend because it was cold outside, and the boyfriend refused her request that he take the camera back to the car for her.  Officer Sharp, who observed this, testified that he told Pumphrey to watch her language and that she looked at him and said, "F*** you."  Sharp testified that he then approached her and asked her if there was a problem, to which she replied, "I'm not f****ng talking to you."  Predictably, Sharp took this poorly, told her she was under arrest, grasped her by the wrist, and attempted to take her into custody for disorderly conduct.

[2]Sharp elected not to take Pumphrey to the ground for three stated reasons:  (1) they were standing on a concrete floor, (2) Pumphrey was wearing a short skirt, and (3) going to the ground with Pumphrey would have posed a possible officer safety issue since at the time they were surrounded by a crowd of other young people waiting to get into the dance.

Pumphrey argues on appeal[3] only that the evidence is factually and legally insufficient to support her conviction.  We affirm her conviction.

In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

In a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the fact-finder's verdict is clearly wrong or manifestly unjust.  *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).  In a factual sufficiency review, we are to afford "due deference" to a fact-finder's determinations. *Marshall*, 210 S.W.3d at 625.  Although an appellate court reviewing factual sufficiency has the ability to second-guess the fact-finder to a limited degree, the review should still be deferential, with a high level of skepticism about the fact-finder's verdict required before a reversal can occur.  *Roberts*, 220 S.W.3d at 521.

---

[3]Pumphrey was convicted by the trial court of misdemeanor resisting arrest.  The court assessed punishment at thirty days' incarceration, probated for twelve months, a fine of $250.00, and court costs of $264.00.

3

The evidence is conflicting. Officer Sharp testified that Pumphrey clearly knew he was an officer because of their verbal interaction after the security guard had told her she could not take her camera into the dance and because she had seen him approaching before he grabbed her wrist. He testified that he told her she was under arrest before grabbing her wrist and that she then began turning in circles and pulling away from him to try to keep him from pinning her arms behind her back.

Sergeant Jeff Hundley, the second officer to arrive, testified that he did not hear Sharp tell Pumphrey she was under arrest, that Sharp was already attempting to cuff Pumphrey when Hundley arrived, and that Sharp told him Pumphrey was under arrest.

David Vasquez, the boyfriend with Pumphrey at the time, testified that the first officer grabbed her wrist, that Pumphrey did not see Sharp or know what was going on and "kind of pulled away," that the officer said she was resisting arrest, and that Pumphrey was screaming, but not too loudly.

Segena McGuiness, a friend of Pumphrey, testified that she remembered no curse words being directed at the officers, that Pumphrey's back was to Sharp as he approached her, that he came up behind her without saying anything else, that he grabbed her wrist and began twisting, and that Pumphrey did not try to get away.

Pumphrey testified that she had cursed at her boyfriend, that, the next thing she knew, her wrist was being twisted and she tried to pull away, that she jerked away, and that she was screaming.

4

She testified Sharp twisted her wrist until her hand almost touched her forearm, so she began to scream and to attempt to jerk her arm away. She testified that, when she got around far enough to see who it was, she asked Sharp what was going on and that he then responded by telling her that she was under arrest for resisting arrest. She testified that, after the first hard jerk, she was "jerking, but it wasn't like I was really pulling. The first initial jerk, I jerked." She also pointed out that she made no effort to run away, push the officer, or leave the scene.

Pumphrey also testified that, when Sharp "slammed" her onto the hood of his car, he split her lip. She also testified that she complained about her wrist and arm being hurt during her arrest and that, after numerous complaints, she was examined by a paramedic and taken to a hospital. The medical conclusion was that her arm was sufficiently twisted to cause a severe sprain, for which she was given a splint for her wrist.

Pumphrey argues evidentiary insufficiency as to two elements of the State's case. First, she argues that the evidence does not establish that she knew an officer was attempting to arrest her, only that she turned and pulled to determine the identity of the person grasping her wrist. Second, she claims the evidence shows that her actions were merely noncooperation and did not rise to the level of resisting arrest.

As to Pumphrey's argument that she did not know an officer was attempting an arrest, the proof conflicts. The officers provided testimony that showed Pumphrey knew an officer was involved. Pumphrey and two of her witnesses testified she was not looking at the officer and thus

5

did not know who had grabbed her. The testimony could have been understood either to show she was watching the officer and was aware of his approach or that she had talked to him and then turned her back on him and thus did not know he was approaching to grab her. The evidence supporting the verdict is neither so weak nor so outweighed by the great weight and preponderance of the evidence as to make the verdict clearly wrong or manifestly unjust. *See id.* at 524. After affording due deference to the fact-finder's determination, we conclude legally and factually sufficient evidence supports this aspect of the verdict. *See Marshall*, 210 S.W.3d at 625.

The essence of Pumphrey's second argument is that one cannot commit the offense of resisting arrest in Texas by just pulling against an officer's effort to physically control him or her, but only by directing force *toward* the officer. Though this argument finds some support from some cases, we hold that the statute authorizes a conviction for resisting arrest when the defendant actively pulls against[4] an officer's established grasp of the defendant during an arrest attempt. We also conclude the statute is satisfied by evidence of jerking against, turning in circles to resist, twisting and squirming to thwart, and struggling against, an officer's efforts to arrest an individual. For that reason, we affirm Pumphrey's conviction.

---

[4]We need not address mere passive resistance, or simple noncooperation, where one sits with arms crossed, crawls away, or the like. *See, e.g.*, *Sheehan v. State*, 201 S.W.3d 820, 823 (Tex. App.—Waco 2006, no pet.); *Leos v. State*, 880 S.W.2d 180 (Tex. App.—Corpus Christi 1994, no pet.) (involving more than simple noncooperation). Here, we are faced with active opposition to the officer's efforts to arrest.

Section 38.03 of the Texas Penal Code frames the offense of resisting arrest—as is relevant to the current case—with a requirement that the subject use "force against" a known peace officer and thereby obstruct the officer from effecting an arrest. *See* TEX. PENAL CODE ANN. § 38.03(a) (Vernon 2003). Therefore, if the record supports a finding that Pumphrey used "force against" the officer, we must affirm her conviction for resisting arrest.

The record reflects that Pumphrey "pulled" and "jerked" against the officer's restraining efforts applied to her wrist and, while doing so, squirmed and twisted and turned her body in relation to the officer to keep the officer from getting both of her arms pulled behind her. Based on the record, the fact-finder could have concluded Pumphrey and the officer struggled for at least a few seconds such that the officer was, for that period of time, unable to get her under control and was considering whether he would have to physically take her to the ground to achieve the control he deemed necessary to effect the arrest. Beyond that, we find no evidence in the record that Pumphrey specifically directed any aggressive force toward the officer or struck him in any way.

Texas cases differ on what is required to establish a use of "force against" an officer under Section 38.03 of the Texas Penal Code. *See Thompson v. State*, 987 S.W.2d 64, 64–65 (Tex. Crim. App. 1999) (Keller, J., dissenting on denial of pet.); *Gary v. State*, 195 S.W.3d 339, 341 (Tex. App.—Waco 2006, no pet.); *Haliburton v. State*, 80 S.W.3d 309, 312 (Tex. App.—Fort Worth 2002, no pet.). The statute is silent on that question, requiring only that the actor use "force against" the officer. *See Sheehan*, 201 S.W.3d at 823; *Anderson v. State*, 707 S.W.2d 267, 270 (Tex.

7

App.—Houston [1st Dist.] 1986, no pet.). Many cases have at least verbalized a distinction between a force directed *toward* an officer and a force that opposes the officer's effort to arrest but which is directed *away from* him or her. *See, e.g.*, *Humphreys v. State*, 565 S.W.2d 59, 60 (Tex. Crim. App. 1978) (striking officer's arms away, pushing at officer, and struggling with officer is sufficient); *Sartain v. State*, 228 S.W.3d 416, 425 (Tex. App.—Fort Worth 2007, pet. ref'd) (flailing arms, striking officer, pushing against officer, struggling causing fall; sufficient); *Gary*, 195 S.W.3d at 341 (releasing attack dog on officer; sufficient); *Torres v. State*, 103 S.W.3d 623, 627 (Tex. App.—San Antonio 2003, no pet.); *Bryant v. State*, 923 S.W.2d 199, 208 (Tex. App.—Waco 1996, pet. ref'd); *Mayfield v. State*, 758 S.W.2d 371, 374 (Tex. App.—Amarillo 1988, no pet.) (attempts by subject to "shoulder" or "elbow" officer out of car, jerking against officer's grasp, and engaging in "pretty violent" struggle; sufficient); *Raymond v. State*, 640 S.W.2d 678 (Tex. App.—El Paso 1982, pet. ref'd) (simple pulling away; insufficient).[5]

Some cases explicitly hold that only a force directed *toward* an officer can support a conviction. *See Leos*, 880 S.W.2d 180;[6] *Raymond*, 640 S.W.2d at 679. But most cases involve actions that are clearly more than a simple pulling away from the officer's restraint. *See, e.g.,*

[5]Some cases consider whether the officer is endangered in any way as a factor supporting such a conviction. *See Sheehan*, 201 S.W.3d at 823; *Gary*, 195 S.W.3d at 341; *Raymond*, 640 S.W.2d at 679; *Bryant*, 923 S.W.2d at 206. But we find in Section 38.03 of the Texas Penal Code no requirement of officer danger.

[6]*Leos* actually involved more than a simple fleeing. There was a struggle on the ground between Leos and multiple officers which lasted for one or two minutes. The court characterized Leos' actions as all being directed away from the officers. *See Leos*, 880 S.W.2d at 184.

*Haliburton v. State*, 80 S.W.3d 309, 312–13 (Tex. App.—Fort Worth 2002, no pet.) (kicking at officer but missing; sufficient); *Luxton v. State*, 941 S.W.2d 339, 340–41 (Tex. App.—Fort Worth 1997, no pet.) (pulling away, plus struggling or fighting with officers; sufficient); *Mayfield*, 758 S.W.2d at 373 (using elbows and shoulder to shove arresting officer out of moving car; sufficient); *Burke v. State*, 692 S.W.2d 570, 571 (Tex. App.—Houston [14th Dist.] 1985, no pet.) (striking officer's arm away; sufficient); *see also Westbrook v. State*, No. 14-06-00040-CR, 2007 Tex. App. LEXIS 909, at *15–16 (Tex. App.—Houston [14th Dist.] Feb. 8, 2007, no pet.) (mem. op., not designated for publication) (suggesting that twisting and pulling away is sufficient).

*Anderson* is sometimes cited[7] for the proposition that merely shaking off an officer's grasp is insufficient. 707 S.W.2d at 269–70. We note, however, that in *Anderson* the parties agreed to that proposition. *Id*. Therefore, though the appellate court cited *Raymond* for that proposition, it had not been called on to rule on that issue. Additionally, there was evidence that Anderson struck the officer. The court affirmed Anderson's conviction.

*Young v. State* is sometimes cited for the proposition that merely pulling away from an officer does not constitute resisting arrest. 622 S.W.2d 99, 100–01 (Tex. Crim. App. 1981). True, Young pulled away from an officer, but he pulled away only after his arrest had already been completed. Thus, it was his pulling away *after having been arrested* that was addressed. Plus, he actually struck the officer. We do not understand *Young* as authority that simple pulling away is insufficient.

---

[7]*See Sheehan*, 201 S.W.3d at 823; *Campbell v. State*, 128 S.W.3d 662, 671 (Tex. App.—Waco 2003, no pet.).

We agree with the cases which criticize the above distinctions. *See Torres v. State*, 103 S.W.3d 623, 627 (Tex. App.—San Antonio 2003, no pet.); *Hopper v. State*, 86 S.W.3d 676, 679 (Tex. App.—El Paso 2002, no pet.); *Bryant v. State*, 923 S.W.2d 199, 207 (Tex. App.—Waco 1996), *pet. ref'd*, 940 S.W.2d 663 (Tex. Crim. App. 1997). We agree that Section 38.03 of the Texas Penal Code does not require action directed at or toward an officer, just force exerted in opposition to his or her efforts at making an arrest.

The distinction between force directed toward the officer and force in opposition to, but away from, the officer can result in almost metaphysical analyses. Must the principal motion of the defendant be toward the officer? What if he or she moves mostly away from the officer, but some portion of his or her body moves toward the officer, as in flailing arms? What if there is a turning or twisting so that at least part of the body moves toward the officer? Must the actions of the defendant actually endanger the officer? How likely must that danger be? What if the "simple" pulling away is so forceful that it causes the officer injury or causes the officer to lose his or her balance? Is that enough? What if the pulling away can be characterized as a struggling with the officer? Is there a distinction between a forceful or violent pulling away and a more casual pulling away? Can one "shake off" an officer's grip without moving toward the officer? Is that force directed toward the officer?

All of those questions can be avoided by simple reference to the statute, which defines "resisting" arrest by using "force against" an officer or another. The ordinary meaning of "resist"

10

does not require that the resistance be directed toward the person or force being resisted. To "resist" is to "exert oneself so as to counteract or defeat." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1060 (11th ed. 2006). Interpreting "force against" to require that force be directed toward the officer contradicts the ordinary meaning of the word "resist." In the absence of a statutory definition to the contrary, we believe the proper understanding of "against" in the context of "resisting arrest" allows for the use of force in opposition to, but not necessarily directed toward, the officer who is attempting to make an arrest. We conclude that "against," as used by Section 38.03 of the Texas Penal Code, does not require force directed *at or toward* the officer, but also is met with any force exerted *in opposition to*, but away from, the officer, such as a simple pulling away.

In 1975, the Texas Court of Criminal Appeals ruled that a quite forceful pulling was enough to constitute resisting arrest, where the defendant was very large and pulled hard enough to drag two officers to her front door. *See Washington v. State*, 525 S.W.2d 189, 190 (Tex. Crim. App. 1975). We see little logical difference between *Washington* and the case at hand, unless the relative amount of force exerted by the accused, the relative strength of the accused and the arresting officer,[8] or the relative danger to an officer is an important factor. None of those factors appear to us to be contained within Section 38.03 of the Texas Penal Code.

---

[8]Sharp stands six feet, two inches tall. A second officer, who was six feet, seven inches and weighed 265 pounds, joined Sharp, and the two managed to pin Pumphrey's arms and handcuff her. Pumphrey is five feet, four inches tall, and weighed 130 pounds at the time. There is no indication she had any particular level of martial arts expertise.

Here, Pumphrey forcefully pulled away from the officer's restraining grasp. Therefore, her conviction must stand. That being said, we add that, here, Pumphrey did more than merely pull away from the officer. She jerked, she squirmed, she twisted, she turned, and she struggled, all against the officer's efforts to physically restrain her in the process of making the arrest. Those actions also sufficiently support the conviction.

Because legally and factually sufficient evidence supports Pumphrey's conviction, we affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice


Date Submitted:    December 27, 2007
Date Decided:      January , 2008

Publish