**Dissenting opinion issued February 14, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-01126-CR

———————————

**ATHA ALBERT DOBBS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 21st District Court**
**Washington County, Texas**
**Trial Court Case No. 15911**

---

## DISSENTING OPINION

Atha Albert Dobbs was convicted of resisting arrest under Penal Code section 38.03, which states in relevant part that a person commits the offense of resisting arrest if he uses "force against the peace officer or another." TEX. PENAL

CODE ANN. § 38.03(a) (West 2011). This is a misdemeanor offense that is elevated to third degree felony if he "uses a deadly weapon to resist the arrest or search." TEX. PENAL CODE ANN. § 38.03(d) (West 2011). Dobbs's sole issue on appeal challenges the sufficiency of the evidence supporting the use of force against the officer or another.

Dobbs was charged with resisting arrest pursuant to an indictment that failed to track the current version of the Penal Code, omitted the element critical to the facts of this case ("using *force* against the peace officer or another") and, instead, recited language from a version of the Penal Code repealed in 1974. Although this charge error was not preserved, the resolution of this case is, nonetheless, found by reference to that critical element of "force."

Accepting Chief Justice Morriss's invitation in *Pumphrey v. State*,[1] the majority's treatment can be argued as a metaphysical recasting of section 38.03(a) so masterful as to give "penumbras" a run for their money in the lexicon of jurisprudence. Believing metaphysics best left to Seventeenth Century poets, this dissent respectfully maintains that the evidence does not sustain a conviction for the offense as charged. When the Texas Legislature drafted the words "using force against the peace officer or another," the offense it sought to define was not a

---

[1] *Pumphrey v. State*, 245 S.W.3d 85, 91 (Tex. App.—Texarkana 2008, pet. ref'd). "The distinction between force directed toward the officer and force in opposition to, but away from, the officer can result in almost metaphysical analyses." *Id.*

prospective arrestee holding a gun to his own head mouthing the words, "I am going to kill myself" in a misbegotten drama to avoid arrest.

When one of the elements of the offense is the use of "force against the peace officer or another," TEX. PENAL CODE ANN. § 38.03(a) (West 2011), and both the officer's actions during the course of the arrest and his testimony at trial establish that the defendant used no such force, no offense was committed.

No argument was made by the prosecutor that Dobbs used force; indeed, the prosecutor told the jury that the officer "holstered his gun because he didn't think he (Defendant) would turn and shoot." The testimony from the State's primary witness, the officer named in the indictment and most instrumental in Dobbs's arrest, Deputy Kyle Kokemoor, was, "I did not feel that the gun was a threat to me at that point and I had my gun trained on him at the time." Almost the entire time Dobbs was possessed of his pistol, he had it held to his own temple. There was no evidence Dobbs was pointing a gun at, or directing any other force towards, the officers, no evidence of physical struggle, or no evidence of threats towards the officers.

The majority advances the notion that "the jury could have inferred that appellant's conduct created a volatile and provocative situation . . . to repel the arrest . . . [by] acts of compulsion and coercion designed to prevent the arrest . . . in opposition to the officers effectuating the arrest." Absent force against the peace

3

officer, however, none of the foregoing constitutes the "force" required for a violation as contemplated by the Code.

## Force

Not defined by the statute, we give "force" its ordinary or common meaning. *See* TEX. GOV'T CODE ANN. § 311.011 (West 2005); *see also* TEX. GOV'T CODE ANN. § 1.05(b) (West 2010) (making Government Code § 311.011 applicable to Penal Code). *Black's Law Dictionary* lists the following definitions:

> "force" - "power, violence or pressure directed against a person or thing,"
>
> "actual force" - "force consisting in a physical act, esp. a violent act directed against (another)," and
>
> "constructive force" - "threats and intimidation to gain control or prevent resistance."

BLACK'S LAW DICTIONARY 717 (9th ed. 2009).

Considering constructive force specifically, "threat" is defined as a "communicated intent to inflict harm or loss on another." *Id.* at 1618. Intimidate is "[to] fill with fear" or "to force into or deter from some action by inducing fear." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY, SECOND EDITION 1000 (2001). Intimidation is defined by *Black's* as "[u]nlawful coercion; extortion." BLACK'S, *supra*, at 898. Thus, constructive force is a communicated intent to inflict harm on another that induces fear in the other for the purpose of gaining control or preventing resistance.

4

**Actual Force**

Many courts have addressed the use of actual, physical force against an officer sufficient for a resisting arrest conviction. Courts have generally held that a defendant's active pulling against an officer's grasp constitutes resisting arrest. *See Pumphrey v. State*, 245 S.W.3d 85, 89 (Tex. App.—Texarkana 2008, pet. ref'd.). The *Pumphrey* court further held that "jerking against, turning in circles to resist, twisting and squirming to thwart, and struggling against" an officer's efforts were all sufficient to convict for resisting arrest. *Id.* Earlier courts distinguished between a force directed *toward* an officer and a force that opposes the officer's efforts to arrest but is directed *away from* the officer. *Id.* at 89–90. Courts have come to agree that the force "against" an officer constitutes force directed *at or toward* the officer as well as force exerted *in opposition to* the officer. *Id.* at 91.

In its consideration of the lexical semantics to which cases treating section 38.03 and "force" have given rise, the majority takes a leap that leads to an incorrect result. The majority opinion states:

> Courts have made clear that section 38.03 does not require action *directed at* or *toward* an officer; rather, it only requires force exerted in opposition to the officer's efforts at making an arrest. *See Pumphrey*, 245 S.W.3d 90–91; *see Hopper v. State*, 86 S.W.3d 676, 679 (Tex. App.—El Paso 2002, no pet.) (reaching conclusion that term "against" means "opposition to").

And then notes: "Viewed objectively, the evidence supports an inference that appellant's conduct was 'in opposition' to the officers' effectuating his arrest."

Dobbs's conduct was undoubtedly "in opposition" to being arrested. Absent force against an officer, however, this "inference" cannot sustain a conviction.

The discussions in both *Pumphrey* and *Hopper* relate to physical contacts between the criminal suspect and the arresting officer. The discussion in those cases was about *physical force* to shake off an officer's detaining grip, whether by pushing or pulling, one who uses either may be guilty of resisting arrest under section 38.03. *See Bryant v. State*, 923 S.W.2d 199, 207–08 (Tex. App.—Waco 1996, *pet. ref'd*, 940 S.W.2d 663 (Tex. Crim. App. 1997). For example, if a person pulls his arm away in a sufficiently violent manner and with enough force to throw the arresting officer to the ground, he is guilty of resisting arrest under section 38.03. This is true even though he forcefully pulled "away" from the officer, not "towards" him. The context of the analysis in those cases was not some disembodied conceptual notion of "against" or "opposition to"—rather, it contemplated physical contact of law enforcement officers and criminal suspects. The majority's analysis would have the whole panoply of scenarios involving a law enforcement officer seeking to make an arrest and a criminal suspect seeking to avoid such a fate inexorably fall within the ambit of section 38.03 simply because the suspect "opposes" the arrest. Mere "opposition" cannot be allowed to be misconstrued as "force." And, at least since 1974, neither can exhibition of a weapon.

6

While one can resist arrest by force even absent physical contact, *see Sartain v. State*, 228 S.W.3d 416, 424 (Tex. App.—Fort Worth 2007, pet. ref'd) (including "flailing arms" and "kicking at" officer without successful physical contact with officer); *see also Haliburton v. State*, 80 S.W.3d, 309, 312–13 (Tex. App.—Fort Worth 2002, no pet.) (holding that defendant's act of "kicking at" officer constituted force even though kick did not connect), *Gary v. State*, 195 S.W.3d 339, 340 (Tex. App.—Waco 2006, no pet.) (releasing vicious dog to attack officer was use of force, even though dog never made contact with officer), unless combined with actions in which there is danger of injury to the officer, a defendant's refusal to cooperate with being arrested does not constitute resisting arrest by force. *Sheehan v State*, 201 S.W.3d 820, 823 (Tex. App.—Waco 2006, no pet.). Courts have made the distinction between actions that endanger an officer and those in which there is no danger of injury to the officer. *Id*.

Here, without any physical contact between Dobbs and the officers, the fact he never pointed the weapon at or otherwise threatened the officers is determinative of the absence of "actual force."

**Constructive Force**

Fewer courts have considered whether the "threats and intimidation to gain control or prevent resistance" which describe constructive force are sufficient to convict. This definition requires consideration of whether the defendant

communicated a threat to inflict harm on a peace officer or another (a "force" sufficient to convict under section 38.03). Such a threat can be communicated verbally or by conduct. *Tidwell v. State*, 187 S.W.3d 771, 775 (Tex. App.—Texarkana 2006). Clearly, a direct threat of bodily harm against an officer communicates a threat sufficient to satisfy the use of force element. *See Campbell v. State*, 128 S.W.3d 662, 671 (Tex. App.—Waco 2003, no pet.). The *Campbell* court held that evidence of the defendant producing a gun, telling the officer to "get back," and physically resisting was more than mere noncooperation or a "pulling away," and was force against the officer. *Id.*

In contrast, Officer Kokomoor's testimony that Dobbs never pointed the gun at anyone other than himself the entire time, that he did not feel the gun to be a threat, and at no point over the course of the encounter did Dobbs threatened harm to any one either verbally or by action conclusively excludes from the analysis any "threat" or "fear" component. When Dobbs retreated toward the interior of the house, Officer Kokomoor holstered his gun and entered the house. The evidence establishes by both word (Kokomoor's uncontroverted testimony) and deed (the fact that he holstered his own weapon to employ a more reasonable force to effectuate the arrest of a defendant seeking to evade it) that no force was used against the officer. Dobbs was tased as he was running away from the officer, clearly an act of retreat rather than aggression. "If [the defendant] was not

8

threatening the officers with the knife and was instead facing away from or running from the officers, a reasonable officer . . . would not have probable cause to believe at the time . . . that there was a threat of serious physical harm to himself or others. . . ." *Stewart v. City of Prairie Vill., Kan.*, No. 12-CV-2185-JAR/DJW, 2012 WL 4951220, at *5 (D. Kan. Oct. 17, 2012).

The evidence simply cannot support a conclusion that Dobbs presented a threat to anyone other than himself. As Dobbs never communicated any intent to inflict harm on another that induced fear in the other for the purpose of gaining control of the situation, there was no constructive force used against a peace officer sufficient for a resisting arrest conviction.

## Conclusion

Accordingly, I respectfully dissent.


Jim Sharp
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Justice Sharp, dissenting.

Publish. TEX. R. APP. P. 47.2(b).

9