

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00108-CR

WILLIAM YARBROUGH, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Court at Law No 1
Lubbock County, Texas
Trial Court No. 2010-462,207, Honorable Mark Hocker, Presiding

March 20, 2014

OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

A jury convicted appellant William Yarborough, Jr., of interference with public duties[1] and resisting arrest[2] and the court assessed punishment at twenty-five days in the county jail. Through two issues, appellant challenges the sufficiency of the evidence supporting the offenses for which he was convicted. We will affirm.

---

[1] TEX. PENAL CODE ANN. § 38.15(a)(1) (West 2011). The offense is a Class B misdemeanor. § 38.15(b).

[2] TEX. PENAL CODE ANN. § 38.03(a) (West 2011) ("Resisting arrest, Search, or Transportation"). As charged, the offense is a Class A misdemeanor. § 38.03(c).

## Background

On August 4, 2010, appellant and his then wife, Jan Bullard, celebrated his birthday at a couple of Lubbock, Texas establishments. According to Ms. Bullard appellant consumed "quite a lot of alcohol." Afterward, she did not allow him to drive so he walked home. About fifteen minutes after Ms. Bullard arrived at the couple's residence, appellant kicked open the front door and entered. Ms. Bullard described the door as "completely broken off the hinges." She testified she felt "very scared" and called 9-1-1. A recording of the call was admitted in evidence.

A Lubbock Police Department patrol officer responded to the 9-1-1 call and on his arrival spoke briefly with Ms. Bullard in front of the residence. According to Ms. Bullard, she told the officer that appellant kicked open the front door, pushed her with his chest down the hall to the bedroom, and when she locked herself in the bedroom, broke open the door. Ms. Bullard did not mention any assaultive conduct by appellant in the 9-1-1 call, however.

As the officer and Ms. Bullard talked, appellant crossed the street, entered a vehicle and started the engine. The officer approached the vehicle to speak with appellant about the domestic violence. Appellant complied when the officer told him to turn off the engine. The officer attempted to open the door but found it locked. According to the officer, appellant exited the vehicle only after several commands. Appellant refused to surrender his vehicle keys to the officer.

The officer described appellant as verbally non-compliant and his behavior as "passive aggressive." He felt the situation was "very volatile."

2

After frisking appellant, the officer directed him across the street by holding the back of his shirt or pants. The officer intended to place appellant in his patrol car. He did not consider appellant under arrest. Rather, he told appellant he was being briefly detained to answer a few questions.

About mid-way across the street appellant refused to proceed further, demanding that the officer close the door of appellant's vehicle. The officer placed his left arm on appellant's arm and pushed him in the direction of the patrol car. Appellant refused to enter the back seat of the patrol car, saying, "That's not going to happen."

The officer then walked appellant to the front of the vehicle and applied his weight against him, intending to place him in handcuffs. Appellant twice withdrew his hand and apparently was not handcuffed at that point. The officer radioed his approaching backup officer to "step it up." In the officer's opinion, appellant's level of agitation was escalating.

The officer then placed appellant in what he described as a "bear hug" with fingers interlocked. Appellant told the officer if he broke free of the hold he would "hurt" the officer. At that point the officer decided to arrest appellant for interference with his duties.

Appellant placed his hands on the hood of the patrol car and pushed back against the officer. The officer swung appellant to the ground and landed on top of him. Appellant agreed that once on the ground he struggled to free himself from the officer's grip. He added that he was unable to breathe and attempted to alleviate the pressure of the officer's grip. He was unsuccessful and the two remained in the bear hug position

3

until the backup officer arrived. In the takedown, appellant's glasses were broken and he sustained a bloody laceration to the forehead.

When the backup officer arrived the officer was still on top of appellant and appellant was still attempting break free of the officer's grip. To the backup officer, it looked as though the officer was having trouble and needed help as appellant was actively resisting. The backup officer tried to release appellant's arm from beneath appellant. Because, according to the officer, appellant was still resisting, the backup officer applied a taser. The officer believed twenty to thirty seconds elapsed from the time the backup officer approached until the moment appellant was tased. Appellant then relented.

In a recorded jail conversation between appellant and Ms. Bullard, Ms. Bullard asked appellant, "Why did you go out there and fight with those police officers?" When appellant was asked at trial what he learned from the experience, he responded, "Don't resist from (sic) the police officer."

## Analysis

In his first issue, appellant asserts the evidence was insufficient to sustain his conviction for resisting arrest because there was no evidence he used force against the officer. Appellant asks us to adopt an interpretation of the offense of resisting arrest that excludes "mere attempts to shake off a detaining grip."

In reviewing its sufficiency, we examine the evidence to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing

4

*Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *Vodochodsky v. State,* 158 S.W.3d 502, 509 (Tex. Crim. App. 2005).  We review all the evidence in the light most favorable to the verdict and assume the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict.  *Rollerson v. State,* 227 S.W.3d 718, 724 (Tex. Crim. App. 2007). Legal sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically correct jury charge.  *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."  *Id.*

Section 38.03 of the Penal Code provides in relevant part, "A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest . . . of the actor . . . by using force against the peace officer . . . ."  TEX. PENAL CODE ANN. § 38.03(a) (West 2011).  Resisting arrest requires proof the force occurred after the arrest began but before it ended.  *Lewis v. State,* 30 S.W.3d 510, 512 (Tex. App.—Amarillo 2000, no pet.).

By amended information the State alleged appellant "did then and there intentionally prevent or obstruct [the officer], a person [appellant] knew to be a peace officer, from effecting an arrest, search, or transportation of the defendant, by pulling away from the said officer's detaining grip and by pushing away from the said peace officer."

5

The charge instructed the jury:

> Now, if you find from the evidence beyond a reasonable doubt that, on or about August 4, 2010 in Lubbock County, Texas [appellant], did then and there intentionally prevent or obstruct [the officer], a person [appellant] knew to be a peace officer, from effecting an arrest, or search, or transportation of [appellant], by pulling away from said officer's detaining grip or by pushing away from said peace officer, then you will find [appellant] guilty of the offense of resisting arrest, search, or transportation as charged in Count 2 of the information.

As appellant points out, some cases have drawn a distinction between force or movement directed toward an officer and that directed in opposition to the officer's effort to arrest but directed away from the officer. *See, e.g., Raymond v. State,* 640 S.W.2d 678, 679 (Tex. App.—El Paso 1982, pet. refused) (holding evidence defendant simply pulled away was insufficient to show use of force against officer); *Leos v. State,* 880 S.W.2d 180, 184 (Tex. App.—Corpus Christi 1994, no pet.) (holding attempt of defendant to frustrate officer's attempt to shackle him was insufficient showing of force directed toward officer to sustain conviction for resisting arrest). Appellant also cites *Anderson v. State,* 707 S.W.2d 267, 270 (Tex. App.—Houston [1st Dist.] 1986, no pet.) (citing *Raymond* for proposition "pulling away" from officer does not constitute "force against" the officer) and *Sheehan v. State,* 201 S.W.3d 820, 822 (Tex. App.—Waco 2006, no pet.) (holding use of force against officers not shown in absence of proof of danger to officers).

We agree with the courts that have rejected the analysis set out in *Raymond*, 640 S.W.2d at 679, focusing on the direction in which the force is applied. *See Salgado v. State,* 2011 Tex. App. Lexis 3299, at *8 (Tex. App.—Dallas May 2, 2011, no pet.) (not designated for publication) (rejecting *Raymond's* directional analysis); *Pumphrey v.*

6

*State,* 245 S.W.3d 85, 91 (Tex. App.—Texarkana 2008, pet. refused) (same);[3] *Hopper v. State,* 86 S.W.3d 676, 679 (Tex. App.—El Paso 2002, no pet.) (disavowing use in *Raymond* of "toward" in connection with § 38.03).[4]

Testimony here showed that after the officer determined to arrest appellant but before completion of the arrest, appellant pushed back against the officer. The officer also testified appellant, after he was encased in the bear hug, was "moving his arms, trying to pull his arms apart." The officer took appellant to the ground but, he testified, as the backup officer arrived, "I was still on top of [appellant] and he was still actively trying to get me off." Appellant's resistance did not end until the backup officer applied the taser. With the officer bear-hugging appellant, fingers interlaced, it is difficult to imagine how appellant could try to pull his arms apart and actively try to get the officer

---

[3] The court noted that a distinction between force directed toward an officer and that directed away from the officer "can result in almost metaphysical analyses." *Pumphrey*, 245 S.W.3d at 91 (posing such questions as "What if there is a turning or twisting so that at least part of the body moves toward the officer?" and "What if the 'simple' pulling away is so forceful that it causes the officer injury or causes the officer to lose his or her balance?").

[4] The court in *Pumphrey* went further, however, holding that the "relative amount of force exerted by the accused" is not an important factor in applying section 38.03. 245 S.W.3d at 91 (posing, among the almost metaphysical questions, "Is there a distinction between a forceful or violent pulling away and a more casual pulling away?"). The Practice Commentary published with an earlier version of the Penal Code stated that a person who "runs away or makes an effort to shake off the officer's detaining grip" has not violated § 38.03. *See Washington v. State*, 525 S.W.2d 189, 190 (Tex. Crim. App. 1975) (quoting commentary). Because the testimony shows appellant's actions went well beyond a "casual pulling away" we need not here express an opinion whether, as presently applied, the phrase "force against the officer" in section 38.03 includes a person's mere "effort to shake off the officer's detaining grip."

off of him without directing force against the officer.[5]  On these facts, a rational jury could infer that appellant's resistance to the officer's effort to arrest him involved the use of force against the officer.  *Hopper,* 86 S.W.3d at 679; *Martin v. State,* No. 03-08-00400-CR, No. 03-08-00401-CR, 2009 Tex. App. LEXIS 5320 (Tex. App.—Austin July 10, 2009, no pet.) (mem. op., not designated for publication) (finding evidence sufficient on facts bearing similarity to those in our present case).  Appellant's first issue is overruled.

In his second issue, appellant argues no evidence was adduced at trial of his interference with the officer's investigation.  According to appellant, case law does not inform "what type of actions by a person will rise to the level of interference and what will be considered to be 'part of the job' of a police officer in respect to the difficult and often emotionally charged and adversarial type interactions that typically occur in an investigative setting."

Section 38.15(a) of the Texas Penal Code provides in pertinent part:

> A person commits [the offense of interference with public duties] if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with:
>
> (1) a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law[.]

TEX. PENAL CODE ANN. § 38.15(a)(1) (West 2011).  The Penal Code defines the requisite culpable mental state of criminal negligence:

---

[5] And, given that the force appellant exerted would almost certainly have been exerted at least in part toward the officer, his actions likely would have supported his conviction even under *Raymond*'s directional analysis of section 38.03.

8

A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(d) (West 2011). To prove a person acted with criminal negligence, the State must show the defendant should have been aware of a substantial and unjustifiable risk, not that the defendant was aware of a substantial and unjustifiable offense. *Lopez v. State,* 630 S.W.2d 936, 940 (Tex. Crim. App. 1982).

The information charged that appellant "did then and there, while [the officer], a peace officer, was performing a duty or exercising authority imposed or granted by law, to-wit: investigating domestic disturbance call, with criminal negligence, interrupt, disrupt, impede, or interfere with [the officer] by forceful resistance."

The application paragraph in the court's charge instructed the jury:

Now, if you find from the evidence beyond a reasonable doubt that, on or about August 4th, 2010 in Lubbock County, Texas, [appellant], did then and there while [the officer], a peace officer, was performing a duty or exercising authority imposed or granted by law to-wit: investigating domestic disturbance call, with criminal negligence, interrupt, disrupt, impede or interfere with the said [officer] by: locking the door, or by refusing to unlock his vehicle, or by refusing to hand over his keys, or by refusing to exit his vehicle, or by refusing to walk over to the patrol vehicle, or by refusing to sit in the patrol vehicle, or by refusing to place his hands behind his back, then you will find [appellant] guilty of the offense of interfering with a public duty as charged in Count I of the information.

Section 38.15 does not supply a specific meaning for the terms "interrupts," "disrupts," "impedes," or "interferes." TEX. PENAL CODE ANN. § 38.15(a) (West 2011). Statutory terms which the Legislature does not define are typically understood according to their ordinary usage, and jurors may afford them any meaning acceptable

9

in common parlance. *Medford v. State,* 13 S.W.3d 769, 771-72 (Tex. Crim. App. 2000); *see* Tex. Gov't Code Ann. § 311.011(a) (West 2013) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage"). Applying the common meaning of the statutory terms, we find sufficient evidence that appellant's conduct interrupted, disrupted, impeded or interfered with the officer's investigation of the domestic disturbance call. *See Berrett v. State,* 152 S.W.3d 600, 604-05 (Tex. App.—Houston [1st Dist.] 2004, pet. refused) (finding evidence of interference with public duties sufficient when defendant's response to officer's attempt to arrest him included repeatedly moving his arm out of officer's reach to prevent officer from placing him in handcuffs despite officer's multiple commands to place his hand behind his back); *Key v. State,* 88 S.W.3d 672, 676 (Tex. App.—Tyler 2002, pet. refused) (finding evidence of interference with public duties sufficient when during a police investigation the defendant, despite being directed by an officer to remain on a sidewalk, six times stepped off the sidewalk and headed toward an individual with whom he was apparently angry).

Citing *Duncantell v. State,* 230 S.W.3d 835 (Tex. App.—Houston [14th Dist.] 2007, pet. refused), appellant argues that the interfering conduct must reach such a level that it essentially "shuts down" a peace officer's performance of duty or authority. *See id.* at 846. The Fourteenth Court made use of the phrase "shuts down" to describe the effect of interference prohibited by section 38.15 in the course of its discussion rejecting a constitutional challenge to the statute. *Id.* at 845-46. We do not read the opinion to say that evidence of a violation of the statute is insufficient unless the accused "shuts down" the peace officer's performance of duty.

10

Based on this record, we find sufficient evidence supported the interference element of the charged offense.  Appellant's second issue is overruled.

## Conclusion

Having overruled appellant's two issues, we affirm the judgment of the trial court.


James T. Campbell
Justice


Publish.