ACCEPTED
06-14-00139-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
3/16/2015 2:50:11 PM
DEBBIE AUTREY
CLERK

In the
Court of Appeals for the
Sixth District of Texas at Texarkana

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

3/16/2015 2:50:11 PM

DEBBIE AUTREY
Clerk

| | | |
|---|---|---|
| **Donny Joe Curry,** | § | |
| Appellant | § | |
| | § | |
| v. | § | **No. 06-14-00139-CR** |
| **The State of Texas** | § | |
| Appellee | § | |

Trial Number  CR1301508 in the
The County Court at Law No. 1 of Hunt County
The Honorable F. Duncan Thomas, Judge Presiding

———————————

STATE'S BRIEF

———————————

**Greg Willis**
County Attorney *Pro Tem*
Hunt County, Texas

*Oral argument is requested if*
*Appellant also requests argument*

**Claire D. Miranda**
Special Prosecutor
2100 Bloomdale Rd., Suite 200
McKinney, TX 75071
(972) 548-4323
FAX (214) 491-4860
State Bar No. 24037121
cmiranda@co.collin.tx.us

# Table of Contents

Index of Authorities ................................................................ ii

Statement Regarding Oral Argument ....................................................... 1

Statement of the Case ...................................................... 1

Statement of Facts ........................................................ 1

Summary of the State's Arguments ........................................... 6

Argument & Authorities ................................................... 7

**Issue One** ( Sufficiency of the Evidence; Resisting Arrest )**.................** **7**

> The evidence is sufficient to sustain Appellant's conviction for resisting arrest. Appellant intentionally obstructed a person he knew to be a peace officer from effecting an arrest of Appellant by using force against the officer.

I.  Standard of Review ........................................................ 7

II.  The State proved that Appellant was guilty of Resisting Arrest. ...... 8

    A.    Appellant used force against a peace officer who was attempting to arrest him ........................................ 8

    B.    Appellant acted with intent to obstruct his arrest ................ 9

Prayer ........................................................................ 14

Certificate of Service .......................................................... 15

Certificate of Compliance ....................................................... 15

# Index of Authorities

**Statutes, Codes, and Rules**

Tex. Penal Code

§ 6.03(a)...............................................................................11

§ 38.03......................................................................................9

§ 38.03(a)..................................................................................8

§ 38.03(c) .................................................................................8

**Cases**

*Brooks v. State,*
  323 S.W.3d 893 (Tex. Crim. App. 2010) ...............................................7

*Dobbs v. State,*
  434 S.W.3d 166 (Tex. Crim. App. 2014) ............................................ 13

*Hemphill v. State,*
  505 S.W.2d 560 (Tex. Crim. App 1974) ............................................. 12

*Jackson v. Virginia,*
  443 U.S. 307 (1979) .......................................................................7

*Montgomery v. State,*
  369 S.W.3d 188 (Tex. Crim. App. 2012) .........................................7, 8

*Pumphrey v. State,*
  245 S.W.3d 85 (Tex. Crim. App. 2008) ....................................8, 9, 12

## Statement Regarding Oral Argument

The State does not believe oral argument will assist the Court in resolving the issues in this case. However, if oral argument is granted to Appellant, the State requests the opportunity to respond.

## Statement of the Case

This is an appeal of a judgment and sentence in a criminal case for the County Court at Law No. 1 of Hunt County, Texas. Appellant was convicted on August 1, 2014. Notice of Appeal was given on August 1, 2014. The clerk's record was filed on October 1, 2014. The reporter's record was filed on November 3, 2014.

Appellant pleaded not guilty to the Class A misdemeanor offense of Resisting Arrest to the Court. The Court found Appellant guilty and sentenced him to 275 days confinement.

## Statement of Facts

On August 26, 2013, Officer Samantha Manrique of the Commerce police department was on routine patrol on Highway 24 in Commerce, Hunt County, Texas 9 RR 63. At approximately 4:00 pm., Officer Manrique observed Appellant's car swerve to the left, nearly striking the median and causing an accident, before heading through

1

an intersection. 9 RR 63. Appellant's car had a broken taillight and a homemade paper license plate. 9 RR 63. Due to these traffic violations, Officer Manrique signaled for Appellant to pull over by activating the overhead lights on her patrol car, and she performed a traffic stop of Appellant's car. 9 RR 64.

When she approached the driver side window, Officer Manrique noted Appellant also had a handmade registration sticker and handmade paper inspection sticker that matched his "license plate". 9 RR 67; 12 RR 39-40. Officer Manrique asked for Appellant's driver's license. 9 RR 64-65 Appellant stated he had no driver license and no insurance. 9 RR 64-65 During her detention of Appellant, Officer Manrique asked Appellant's name. 9 RR 64-65 Appellant responded that his first name was "Donny" and stated he did not wish to give his last name as it was a family name. 9 RR 64-65. Appellant refused to give any further identifiers. 9 RR 70-71. After speaking with him further, Appellant handed Officer Manrique paperwork purporting to explain why he did not need to have a driver license, insurance, or license plate. 9 RR 66. The paperwork did not provide any identifying information. 9 RR 70-71. Appellant told Officer

Manrique he was a sovereign citizen. 9 RR 66. Due to a concern about sovereign citizens' proclivity toward violent behavior, Officer Manrique called her lieutenant for backup. 9 RR 66, 122-123.

Officer Manrique had to give dispatch a full description of the vehicle, as she could not identify the driver from his own statements or his "license plate". 9 RR 66 Lieutenant Mike Pehl and Sergeant Steve Scott arrived on scene as backup. 9 RR 68. Manrique told Lieutenant Pehl that Appellant identified himself as a sovereign citizen. 9 RR 125-126. Lieutenant Pehl was aware through training and experience that sovereign citizens believe in a totally different form of government that derives from the law of man and the law of the land, rather than from the constitution. 9 RR 124-125. Lieutenant Pehl and Sargent Scott, both wearing police identification on their clothing, approached Appellant's car and Lieutenant Pehl asked Appellant to identify himself. 9 RR 127. Lieutenant Pehl identified himself as a peace officer to Appellant. 9 RR 128. He informed Appellant that Appellant had to identify himself to a peace officer or he was in violation of the law. 9 RR 127-128. Appellant refused to identify himself but told Lieutenant Pehl he wanted to

show him something.  9 RR 127-129 Appellant then reached into the top of his briefcase.  9 RR 128-129.  Due to his fear about sovereign citizens' potential for violent behavior, Lieutenant Pehl drew his weapon from his holster and told Appellant to show him his hands.  9 RR 128.  Appellant pulled his hands from the briefcase, Lieutenant Pehl holstered his weapon and grabbed Appellant's arm to pull Appellant from the car.  9 RR 128.  Lieutenant Pehl pulled on Appellant's arm several times but was not able to pull Appellant from the car.  9 RR 128-129.  Lieutenant Pehl asked Officer Manrique for her Taser, which Manrique handed to him, and told Appellant he would tase him if he did not step out of the vehicle.  9 RR 129.  Appellant continued to refuse.  9 RR 129.  Lieutenant Pehl then tased Appellant.   9 RR 129.

Lieutenant Pehl continued trying to get Appellant out of the car, this time from the passenger's side, but Appellant locked his arms on the steering wheel in resistance.  9 RR 97.  Lieutenant Pehl tased Appellant a second time, this time in his side, to try and get Appellant compliant and was ultimately successful in pulling Appellant bodily from the car.  Once outside, Appellant continued to

4

flail about screaming. 9 RR 69-70, 129-130. Lieutenant Pehl held onto Appellant's torso area and was able to secure one handcuff. 9 RR 69-70, 129-170. Sergeant Scott had to secure the other handcuff on Appellant. 9 RR 69-70. Appellant was placed into custody at that time. 9 RR 69-70. Lieutenant Pehl located identifying paperwork in Appellant's car after the arrest. 9 RR 82.

*State's Reply to Issue One*

The evidence is sufficient to sustain Appellant's conviction for resisting arrest.  Appellant intentionally obstructed Lieutenant Pehl, a person he knew to be a peace officer from effecting an arrest of Appellant by using force against the officer.

## Issue One
(Sufficiency: Resisting Arrest)

The evidence is sufficient to sustain Appellant's conviction for resisting arrest. Appellant intentionally obstructed a person he knew to be a peace officer from effecting his arrest by using force against the officer.

## I. Standard of review

In a sufficiency review, the appellate court views the evidence in the light most favorable to the prosecution and determines whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality & concurring opinions). The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimonies, and the reviewing court must not usurp this role by substituting its own judgment for that of the jury. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The duty of the reviewing court is simply to ensure that the evidence presented

supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged. *Id.* When the reviewing court is faced with contradicting inferences, the court must presume that the jury resolved any such conflicts in favor of the verdict, even if not explicitly stated in the record. *Id.*

## II. The State proved that Appellant was guilty of Resisting Arrest

To prove resisting arrest as charged in the information, the State had to prove that Appellant intentionally prevented or obstructed a person he knew was a peace officer from effecting an arrest, search, or transportation of the actor by using force against the peace officer." *See* Tex. Penal Code § 38.03(a); 9 RR 33 An offense under this section is a Class A misdemeanor. Tex. Penal Code § 38.03(c).

### A. Appellant used force against a peace officer who was attempting to arrest Appellant

Appellant complains that the State evidence of resisting was insufficient because his actions were not enough to amount to resisting and that his interaction with officers was too brief to encompass resisting behavior. Appellant cites to *Pumphrey v. State*,

to support his position on both points. 245 S.W.3d 85 (Tex. Crim. App. 2008). The holding in *Pumphrey*—that a person can be properly convicted of resisting where she pulled her arm away from an officer's force—closely matches the facts on appeal here and supports the State's position that Appellant's actions on August 26, 2013, amounted to resisting. *Pumphrey* states that the meaning of resistance is "to exert oneself so as to counteract defeat." *Id.* at 91. *Pumphrey* ultimately holds that the word "against" in the context of resisting arrest "as used by Section 38.03 of the Texas Penal Code, does not require force directed at or toward the officer, but is also met with any force exerted *in opposition to*, but away from, the officer, such as a simple pulling away." *Id* at 91. Nowhere does the court state that the duration of the encounter is the deciding factor in a resisting case. *See id.* Rather, it is a subject's actions that dictate resistance.

At the very least, Appellant met the definition of resisting instituted in *Pumphrey* when he obstructed Lieutenant Pehl's attempt to arrest him by pulling away. As established on direct examination:

9

Pehl: I opened the door of the vehicle. [Appellant] says, I want to show you something. He reaches down into the top of the briefcase. As he does, having knowledge of the violence and proclivity of people of -- that are sovereign citizens, I pull my firearm from my side, from my holster. I level it on him, and I tell him to show me your hands.

Q. What does he do?

A. He immediately pulls his hands out of the briefcase and holds them up like this. When he does, I holster my weapon, and I grab his left arm, pulling it outside of the open doorway of the vehicle.

Q. Does he come out?

A. Not initially. At this point, I pulled on him several times, trying to bar his arm against the vehicle to induce a certain amount of pain so he will not resist, that he will come forth with the force that I apply, and he fails to do so. 9 RR 128-129.

After this initial resistance, Appellant continued to obstruct Lieutenant Pehl's attempts to get Appellant from the car:

Pehl: I then tell the driver that I'm going to tase him if he does not come out of the vehicle. He again starts to refuse and argue with me. I remove the cartridge from the Taser. I employ a drive-stun to the individual's rib cage. He hollers and screams but locks his right arm into the steering wheel, and I cannot pull him from the vehicle. 9 RR 129-130.

Lieutenant Pehl tasered Appellant again and Sergeant Scott, who had been attending the passenger, came to assist. Between the two of

them, Lieutenant Pehl and Sergeant Scott were finally able to pull Appellant from the car, although Appellant continued to exert force against them:

> Pehl: I grab [Appellant] around the upper chest. His arms are flailing out to his side. I take him to the hood of the patrol car, place him on the hood of the patrol car, pull his arms behind his back with the assistance of Detective Sergeant Scott. Handcuffs are then placed on the person, and he's placed into a police vehicle by another officer. 9 RR 130.

Officer Manrique and Sergeant Scott likewise testified that Appellant continued to "flail" and" "scream" once removed from the car and that it took the force of two officers to secure handcuffs on Appellant. 9 RR 69-70.

The amount of time it took Appellant to resist is irrelevant. Appellant clearly exerted force to obstruct his arrest on multiple occasions during his interaction with Lieutenant Pehl.

## A. Appellant acted with intent to obstruct an arrest

"A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective to engage in the conduct or cause the result." Tex.

Penal Code § 6.03(a). It is well settled that intent is a question of fact to be determined by the trier of facts from all facts and circumstances in evidence. *Hemphill v. State*, 505 S.W.2d 560, 562 (Tex. Crim. App 1974) Appellant argues that the State would have to prove it was his intent to resist arrest and that Appellant did not have a clear indication he was about to be arrested. App. Br. 16. To the contrary, a reasonable person in Appellant's position should know he was about to be arrested. At the point Appellant was tased, Lieutenant Pehl had already asked for his name, informed him he was in violation of the law, removed his duty weapon from his holster and leveled it at him, grabbed his arm, and attempted to pull him from the vehicle. Appellant further argues that it was the effects of the taser, and not Appellant's intentional actions, that caused him to hold onto the steering wheel. Aside from being completely conclusory, that theory is irrelevant where the resisting behavior both preceded and followed the taser activity, as discussed, *supra*.

The totality of the circumstances support the Court's finding beyond a reasonable that Appellant acted intentionally to obstruct arrest. *See Pumphrey*, 245 S.W.3d at 91-92 (pulling away, squirming,

twisting, and struggling sufficient to prove resisting arrest); *cf Dobbs v. State*, 434 S.W.3d 166, 173 (Tex. Crim. App. 2014) (evidence insufficient to prove resisting where Dobbs held gun to his own head and threatened to kill himself when officers attempted to arrest him). This issue should be overruled.

## Prayer

The State prays that this Court will affirm Appellant's conviction and sentence.

**Greg Willis**
County Attorney *Pro Tem*
Hunt County, Texas

/s/ Claire D. Miranda
**Claire D. Miranda**
Special Prosecutor
Asst. Criminal District Attorney
2100 Bloomdale Rd., Suite 200
McKinney, TX 75071
State Bar No. 24037121
(972) 548-4331
FAX (214) 491-4860
cmiranda@co.collin.tx.us

## Certificate of Service

The State has e-served counsel for Appellant, the Honorable Jason Duff, through the eFileTexas.gov filing system and sent a courtesy copy by e-mail to jasonaduff@gmail.com on this, the 16th day of March 2015.

/s/ Claire D. Miranda
Assistant Criminal District Attorney

## Certificate of Compliance

This brief complies with the word limitations in Texas Rule of Appellate Procedure 9.4(i)(2). In reliance on the word count of the computer program used to prepare this brief, the undersigned attorney certifies that this brief contains 2,073 words, exclusive of the sections of the brief exempted by Rule 9.4(i)(1).

/s/ Claire D. Miranda
Assistant Criminal District Attorney