# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00015-CR

**William Bryan Finley, III, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF WILLIAMSON COUNTY
### NO. 11-01764-2, HONORABLE TIMOTHY L. WRIGHT, JUDGE PRESIDING

## O P I N I O N

Following a bench trial, appellant William Bryan Finley, III, was convicted of the offense of resisting arrest and sentenced to 90 days' imprisonment.[1]  The trial court suspended imposition of the sentence and placed Finley on community supervision for fifteen months.  In a single point of error on appeal, Finley asserts that the evidence is insufficient to support his conviction.  We will affirm the judgment of conviction.

## BACKGROUND

The trial court heard evidence that on the morning of March 5, 2011, Officer Ginger Fuller of the Leander Police Department (LPD) arrived at Finley's residence to arrest his son-in-law, Dennis Boyd, for an outstanding speeding ticket, as part of a periodic "warrant roundup."

---

[1]  *See* Tex. Penal Code § 38.03.

According to Fuller, Finley answered the door, told Fuller that Boyd was sleeping, and "refused to let [Fuller] speak to [Boyd] . . . unless [Fuller] would provide him a copy of the warrant." Fuller found Finley's attitude to be "very uncooperative," and she requested backup.

Shortly thereafter, LPD Officer Jarrett Rollins arrived as Fuller's backup and LPD Corporal John Lauden arrived with a copy of the arrest warrant. However, according to Fuller, Finley still "refused to cooperate." Fuller explained, "He started telling us that our warrant was false and we're serving a false warrant. And then he, again, went back inside." At this point, Fuller believed the situation was escalating because of Finley's "demeanor" and how he was "not cooperating with us at all." When Finley went back inside the house, he called 911 and reported that LPD officers "were serving a false warrant." In response to this, the officers on the scene decided to call LPD Officer Scott Connor, the warrant officer who was supervising the roundup.

When Connor arrived, Fuller testified, Finley again "refused to cooperate," and Connor decided to arrest Finley for hindering the apprehension of Boyd, with the assistance of Rollins. What happened next was controverted at trial. As we explain in more detail below, Officers Fuller, Rollins, and Connor all testified that Finley exerted force in opposition to his arrest, primarily by "pulling away" from Connor and Rollins, while Finley and other defense witnesses who were at the residence during the arrest testified that Finley offered no such opposition.

At the conclusion of trial, the trial court found Finley guilty of resisting arrest and placed him on community supervision as noted above. This appeal followed.

**STANDARD OF REVIEW**

When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the finding of guilt to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[2] We must consider all the evidence in the record, whether direct or circumstantial or properly or improperly admitted.[3] We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the finding, and we defer to the trier of fact's determinations of the witnesses' credibility and the weight to be given their testimony.[4]

**ANALYSIS**

A person commits the offense of resisting arrest "if he intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another."[5] There is an important distinction between resisting arrest and evading arrest. Resisting arrest requires "'the use of force. One who runs away or makes an effort to shake off the officer's detaining grip may be guilty

---

[2] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[3] *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[4] *Jackson*, 443 U.S. at 318; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *Clayton*, 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. art. 38.04.

[5] Tex. Penal Code § 38.03(a).

of evading arrest under Section 38.04 [evading arrest], but he is not responsible under [Section 38.03].'"[6]

Texas courts have not been in agreement or complete clarity regarding the actions that constitute "resisting arrest."[7] At least two courts of appeals have held that the act of pulling away from an officer, in itself, is insufficient to support a conviction for resisting arrest.[8] Similarly, this Court, in an unpublished opinion from 2004, once suggested that the act of pulling away from an officer, without more, would not be sufficient to support a conviction for resisting arrest (although in that case, there was more, as the defendant, during the course of resisting arrest, had dragged the arresting officer two feet).[9] However, other courts have held that the act of pulling away from an

---

[6] *Washington v. State*, 525 S.W.2d 189, 190 (Tex. Crim. App. 1975) (quoting Seth S. Searcy III & James R. Patterson, *Practice Commentary*, Tex. Penal Code § 38.03)).

[7] *See Thompson v. State*, 987 S.W.2d 64, 64-65 (Tex. Crim. App. 1999) (Keller, J., dissenting from refusal of PDR) (acknowledging conflict among courts of appeals).

[8] *See Raymond v. State*, 640 S.W.2d 678, 679 (Tex. App.—El Paso 1982, pet. ref'd) (focusing on direction in which force is employed and concluding that force must be directed toward arresting officer rather than used to get away from officer); *see also Leos v. State*, 880 S.W.2d 180, 184 (Tex. App.—Corpus Christi 1994, no pet.) (following *Raymond* and concluding that acts of "shaking off a detaining grip" and attempting to flee from arresting officer are insufficient to support conviction for resisting arrest). The *Raymond* and *Leos* opinions have been repeatedly criticized by other courts for focusing on the direction in which the force is applied—"toward" the officer as opposed to "away" from the officer. *See, e.g.*, *Yarbrough v. State*, 429 S.W.3d 118, 122 (Tex. App.—Amarillo 2014, no pet); *Pumphrey v. State*, 245 S.W.3d 85, 91 (Tex. App.—Texarkana 2008, pet. ref'd); *Torres v. State*, 103 S.W.3d 623, 627 (Tex. App.—San Antonio 2003, no pet.); *Bryant v. State*, 923 S.W.2d 199, 207 (Tex. App.—Waco 1996, pet. ref'd); *see also Salgado v. State*, No. 05-10-00638-CR, 2011 Tex. App. LEXIS 3299, at *7-8 (Tex. App.—Dallas May 2, 2011, no pet.) (not designated for publication). The El Paso Court of Appeals has subsequently "disavow[ed] [its] language in *Raymond* using the word 'toward' in connection with Section 38.03." *See Hopper v. State*, 86 S.W.3d 676, 679 (Tex. App.—El Paso 2002, no pet.).

[9] *See Spurk v. State*, No. 03-03-00255-CR, 2004 Tex. App. LEXIS 5534, at *7 (Tex. App.—Austin June 24, 2004, no pet.) (mem. op., not designated for publication) (upholding

officer during an arrest could be sufficient, depending on the circumstances, to support a conviction for resisting arrest.[10]

The Texas Court of Criminal Appeals recently spoke to this issue in *Dobbs v. State*, concluding that "the statutory language plainly requires a use of force directed 'against' the officer himself, not against his broader goal of effectuating an arrest."[11] The court also concluded that "the Legislature would have understood the phrase 'using force against the peace officer or another' as meaning violence or physical aggression, or an immediate threat thereof, in the direction of and/or

---

conviction for resisting arrest because "defendant exerted a force that was not limited to the attempt to pull away"). In a later unpublished opinion, this Court concluded that evidence of the defendant's "pushing, pulling, and shoving" of the arresting officer, which the officer described as a "violent twisting and turning," was sufficient to support a conviction for resisting arrest. *See Martin v. State*, Nos. 03-08-00400-CR & 03-08-00401-CR, 2009 Tex. App. LEXIS 5320, at *15-16 (Tex. App.—Austin July 10, 2009, no pet.) (mem. op., not designated for publication). The parties have not directed us to any published opinion from this Court addressing the issue before us, and we are not aware of any.

[10] *See Pumphrey*, 245 S.W.3d at 91 (defendant "forcefully pulled away from the officer's restraining grasp," as well as "jerked," "squirmed," "twisted," "turned," and "struggled"; evidence sufficient); *Torres*, 103 S.W.3d at 627 ("[A] person who uses force in order to shake off an officer's detaining grip, whether by pushing *or pulling*, may be guilty of resisting arrest under section 38.03." (emphasis added)); *Luxton v. State*, 941 S.W.2d 339, 340-41 (Tex. App.—Fort Worth 1997, no pet.) (defendant was "pulling his hands away" from officers and was also observed "fighting" and "struggling" with them; evidence sufficient); *Bryant*, 923 S.W.2d at 208 (defendant "stiffened up" and jerked his right arm back; swung his body around, propelling him and officer to ground; and continued to hold his right arm stiffly underneath his body while officer handcuffed his left arm; evidence sufficient); *see also Ritz v. State*, No. 11-12-00037-CR, 2014 Tex. App. LEXIS 1131, at *11 (Tex. App.—Eastland Jan. 31, 2014, no pet.) (observing that "pulling one's arm away from an officer's grasp could constitute sufficient force within the meaning of the [resisting-arrest] statute"); *Salgado*, 2011 Tex. App. LEXIS 3299, at *3-4 (defendant "pulled his arm away from [officer], bringing his arms to the center of his chest and pulling 'his whole body' away" from officer; evidence sufficient).

[11] 434 S.W.3d 166, 2014 Tex. Crim. App. LEXIS 908, at *11 (Tex. Crim. App. June 25, 2014).

into contact with, or in opposition or hostility to, a peace officer or another."[12] Applying these concepts to the facts before it, the court concluded there was no evidence in that case that such force had been used. The evidence in *Dobbs* tended to show that the defendant, during the course of his arrest, threatened to shoot himself with a firearm, was tasered by the arresting officer, fell to the floor, pinned one hand beneath himself while his other hand was still holding the gun, and did not comply with the officer's instruction to put his hands behind his back.[13] The officer tasered Dobbs a second time and then kicked the gun out of his hand, which enabled the officer to complete the arrest.[14] The court held that this evidence was insufficient to sustain Dobbs's resisting-arrest conviction.[15]

*Dobbs* involved a unique set of facts, particularly a defendant who was threatening to shoot himself—but not the officers—during the arrest. The case appeared to turn on the fact that Dobbs had never threatened to use the gun or any other type of force against the officers in any manner. As the court explained:

> Here, the record indicates that appellant at all times either held the gun at his side or pointed it at himself, and never at officers or anyone else. The record is devoid of any evidence to indicate that appellant threatened to use any kind of force against the officers, but instead shows that he threatened only to shoot himself. [The arresting officer] indicated in his testimony that he did not feel threatened by appellant at any point, and no evidence in the record suggests that appellant directed any threat to or against [the arresting officer] or any of the other officers.

---

[12] *Id*. at *10.

[13] *Id*. at *3.

[14] *Id*.

[15] *Id*.

6

> It is true that appellant's conduct in displaying the gun in the presence of officers and refusing to put the gun down when ordered to do so could rationally be found to constitute a use of 'force' within the meaning of the statute, but without an additional showing that the force was directed at or in opposition to the officers, he cannot reasonably be said to have used force 'against' a peace officer.[16]

In the course of addressing the unique facts presented, the court thus indicated that the defendant's use of force must be directed "at or in opposition to the officers" to constitute "resisting arrest."[17] And elsewhere in its opinion, significantly, the court indicated that this concept would include "some showing of force that is actually directed against the officer in the sense that it is either in opposition to the officer's physical efforts at making an arrest, *such as a forceful pulling away from the officer*, or is physically directed at or toward the officer, such as hitting or punching the officer."[18] The key distinction, the court further elaborated, is between acts directed at or in opposition to the *officer* as opposed to the *arrest* in and of itself.[19]

In this case, unlike in *Dobbs*, there is evidence from which a rational trier of fact could have reasonably inferred that Finley had directed force "at or in opposition to" the officers, as the court of criminal appeals seems to view it, by forcefully pulling away from them. Officer Connor testified that as he was arresting Finley, Finley "was clenching up, pulling, and trying to pull his arm away from me." Connor "could not get him fully under control," so Officer Rollins had to assist Connor "in trying to get him handcuffed." Connor "was holding onto the defendant's right arm"

---

[16] *Id*. at *17.

[17] *See id*.

[18] *Id*. at *13 (citing *Pumphrey*, 245 S.W.3d at 89-90) (emphasis added).

[19] *See id*. at *13-15.

7

while Rollins "grabbed the defendant's left arm," and Finley "kept clenching in towards his abdomen." Connor continued,

> So we pinned him up against the door and I started to get his right arm out from behind, but I could not get the cuff on him because he was actively pulling away and trying to get away from us. And I told him to stop resisting, and he continued to resist. And then I—I ordered him to get on the ground, he failed to do so and so I had to take him down to the ground and try to gain control at that point.

Connor added, "[W]e could not keep his hands behind his back because he kept pulling them out." The prosecutor then asked Connor, "So he was actually pulling his hands away from—from yours and Officer Rollins's attempt to grasp him?" Connor answered, "That is correct, trying to pull away from us." The State also had Connor physically demonstrate the arrest for the jury. During this demonstration,[20] the following testimony was elicited:

> Q.  You then ask for . . . the defendant to put his hands behind his back?
>
> A.  That's correct.
>
> Q.  What happens then?
>
> A.  And when I asked him that, I grabbed this arm and I went to turn him like this, and at that point that's when he tried to turn back around on me.

---

[20] The record does not reflect the gestures or actions that Connor exhibited during the demonstration. However, we are to view such demonstrations as supporting the finding of guilt, even when they are not transcribed in the record. *See Morales v. State*, 293 S.W.3d 901, 909 (Tex. App.—Texarkana 2009, pet. ref'd); *Wawrykow v. State*, 866 S.W.2d 87 (Tex. App.—Beaumont 1993, pet. ref'd); *Rogers v. State*, 756 S.W.2d 332, 336 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd); *Gaona v. State*, 733 S.W.2d 611, 613-14 & n. 1 (Tex. App.—Corpus Christi 1987, pet. ref'd). This principle would further support our analysis above, and would arguably require us to affirm even if that analysis is mistaken.

Q. Was he turning this way or turning back the way you're telling me; or do you recall?

A. I believe—I believe he was trying to turn back this way.

Q. Okay. Turning back towards you?

A. And—and so, at this point, when I was trying to grab this other arm he started to pull that one out, and then that's when Officer Rollins came over and grabbed his left arm. And we were both trying to get the hands in the middle of the back. He kept pulling forward, so that's when we pinned him against the door. And—and the reason he was pinned against the door is because we were going to hold onto him, try to stabilize this arm and get the handcuff on him. But every time we'd get one arm stabilized he'd pull the other one out.

Q. And you said before that he was moving his hands, pulling them towards his abdomen in front of him?

A. That's correct. He kept pulling towards the front of him.

Officer Rollins, at one point during his testimony, described Finley as "struggling" with Officer Connor during the arrest, which is why Rollins decided to use his taser on Finley. Officer Fuller, who had observed the arrest, similarly testified that there was a "scuffle" between Finley and the officers and described Finley as "flailing around" and "actively resisting" the arrest.

As the State acknowledged both at trial and on appeal, there was no evidence presented that Finley had attempted to hit, kick, punch, or push any of the officers. However, there was evidence presented that Finley had pulled away from the officers, and based on the surrounding circumstances of the arrest as described and demonstrated to the trial court, a rational trier of fact could have reasonably inferred that he had done so in a forceful manner. These circumstances include the following: (1) Finley was "clenching up, pulling, and trying to pull his arm away from" Officer Connor; (2) when Connor grabbed Finley's arm to place him in handcuffs and "tried to turn

9

him," Finley "tried to turn back around" on Connor; (3) Connor "could not get [Finley] fully under control"; (4) two officers were required to restrain Finley's arms, with one officer grabbing his left arm and the other officer grabbing his right arm; (5) Connor "could not get the cuff on [Finley] because he was actively pulling away and trying to get away from us"; (6) the officers were unable to "keep [Finley's] hands behind his back because he kept pulling them out"; (7) the officers were "both trying to get [Finley's] hands in the middle of [his] back," but Finley "kept pulling forward," preventing them from doing so; (8) the officers tried to stabilize Finley's arm and handcuff him, but "every time [the officers would] get one arm stabilized he'd pull the other one out"; (9) Finley "kept pulling" his hands toward the front of his abdomen to prevent the officers from cuffing him; (10) the arrest was described by Rollins at one point during his testimony as a "struggle" and was described by Fuller as a "scuffle," with Finley "flailing around" and "actively resisting" arrest. These circumstances, the trial court could have reasonably found, tended to show that Finley had, among other things, forcefully pulled away from the arresting officers.[21]

As indicated above, witnesses for the defense, including Finley, testified that he did not use any force during the arrest. However, the trial court, as the finder of fact, was free to credit the testimony of the arresting officers and to find the testimony of the defense witnesses not credible, and we are to defer to the trial court's resolution of the conflicting evidence in favor of the

---

[21] *See Dobbs*, 2014 Tex. Crim. App. LEXIS 908, at *13 (explaining that conviction for resisting arrest requires "some showing of force that is actually directed against the officer . . . such as a forceful pulling away from the officer"); *Pumphrey*, 245 S.W.3d at 91 (holding that resisting-arrest conviction "must stand" when evidence tended to show that defendant "forcefully pulled away from the officer's restraining grasp").

prosecution.[22] Viewing the above evidence and all reasonable inferences therefrom in the light most favorable to the finding of guilt, we conclude that the evidence is sufficient to prove that Finley committed the offense of resisting arrest.[23]

We overrule Finley's sole point of error.

## CONCLUSION

We affirm the trial court's judgment of conviction.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose;
   Dissenting Opinion by Chief Justice Jones

Affirmed

Filed:  August 28, 2014

Publish

---

[22] *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899.

[23] The dissenting opinion regards the factual circumstances in this case as similar to those presented in *Sheehan v. State*, 201 S.W.3d 820 (Tex. App.—Waco 2006, no pet.), a case in which the Waco Court of Appeals concluded that the evidence was insufficient to support the defendant's conviction for resisting arrest. *See id*. at 822. Although the circumstances in both cases appear to be at least facially similar, there appears to be more extensive and detailed testimony in this case concerning the circumstances surrounding the arrest, as well as a physical demonstration of what had occurred by one of the arresting officers. The trial court, as fact-finder, was able to observe that demonstration and draw reasonable inferences from it and the other evidence in this case. And, under our standard of review, we are to defer to those reasonable inferences. *See supra* n.20.