PD-1473-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/15/2015 11:32:13 AM
Accepted 4/15/2015 12:38:35 PM
ABEL ACOSTA
CLERK

**NO. PD-1473-14**

IN THE

COURT OF CRIMINAL APPEALS OF TEXAS

AUSTIN, TEXAS

| | | |
|---|---|---|
| WILLIAM BRYAN FINLEY, III | § | APPELLANT |
| vs. | § | |
| THE STATE OF TEXAS | § | APPELLEE |

FROM THE THIRD COURT OF APPEALS, AUSTIN, TEXAS
CASE NUMBER 03-13-00015-CR

ON APPEAL FROM THE COUNTY COURT AT LAW #2
WILLIAMSON COUNTY, TEXAS
CAUSE NUMBER 11-01764-2

APPELLANT'S BRIEF ON THE MERITS

CHRISTOPHER M. PERRI
Chris Perri Law
1504 West Ave.
Austin, Texas 78701
(512) 917-4378
Fax No. (512) 474-8252
chris@chrisperrilaw.com
State Bar No. 24047769
COUNSEL FOR APPELLANT

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| APPELLANT | William Bryan Finley, III (Defendant in the Trial Court) |
| COUNSEL FOR APPELLANT IN THE APPELLATE COURTS | Christopher M. Perri 1504 West Ave. Austin, Texas 78701 |
| COUNSEL FOR APPELLANT IN THE TRIAL COURT | Jack Webernick 120 W. 8th St. Georgetown, Texas 78626-5852 |
| APPELLEE | The State of Texas |
| COUNSEL FOR APPELLEE | Doyle "Dee" Hobbs, Jr. Williamson County Attorney 405 M.L.K., Suite 240 Georgetown, Texas 78626 |
| COUNSEL FOR APPELLEE IN THE TRIAL COURT | Trey Thompson Assistant Williamson County Attorney 405 M.L.K., Suite 240 Georgetown, Texas 78626 |
| COUNSEL FOR APPELLEE IN THE APPELLATE COURTS | James LaMarca Assistant Williamson County Attorney 405 M.L.K., Suite 240 Georgetown, Texas 78626 |

## TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................... i

TABLE OF AUTHORITIES ...................................................................... iii

STATEMENT OF THE CASE.....................................................................v

ISSUE PRESENTED ......................................................................... vi

STATEMENT OF FACTS .......................................................................2

SUMMARY OF THE ARGUMENT ................................................................11

ARGUMENT AND AUTHORITIES....................................................................11

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE TRIAL COURT'S VERDICT OF GUILTY ON THE RESISTING ARREST CHARGE. .......................................................................11

A. Evidence of non-cooperation is not sufficient to establish Resisting Arrest because the statute requires that the defendant use force against the arresting officer……………………………… ..…12

B. Viewing the evidence in the light most favorable to the verdict, Appellant's non-cooperative conduct cannot be deemed Resisting Arrest because there was no evidence that he used force against the officers………………………………………………………………21

PRAYER .......................................................................24

CERTIFICATE OF SERVICE ....................................................................25

CERTIFICATE OF COMPLIANCE...................................................................26

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. State*, 707 S.W.2d 267 (Tex. App.—Houston [1st Dist.] 1986, no pet.) ................................................................................................................17

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) ......................................12

*Bryant v. State*, 923 S.W.2d 199 (Tex. App.—Waco 1996, pet. ref'd)............ 18, 22

*Dobbs v. State*, 434 S.W.3d 166 (Tex. Crim. App. 2014) .......................... 13-14, 18

*Finley v. State*, 449 S.W.3d 145 (Tex. App.—Austin 2014, pet. granted)..............18

*Hopper v. State*, 86 S.W.3d 676 (Tex. App.—El Paso 2002, no pet.) ....................15

*Jackson v. Virginia*, 443 U.S. 307 (1979).................................................................12

*Leos v. State*, 880 S.W.2d 180 (Tex. App.—Corpus Christi 1994, no pet.)............16

*Malik v. State*, 953 S.W.2d 234 (Tex.Crim.App. 1997) ..........................................12

*Pumphrey v. State*, 245 S.W.3d 85 (Tex. App.—Texarkana 2008, pet. ref'd).. 18-20

*Raymond v. State*, 640 S.W.2d 678 (Tex. App.—El Paso 1982, no pet.)......... 15, 17

*Ross v. State*, 133 S.W.3d 618 (Tex.Crim.App. 2004) ............................................12

*Sartain v. State*, 228 S.W.3d 416, 425 (Tex. App.—Fort Worth 2007, pet. ref'd) .13

*Sheehan v. State*, 201 S.W.3d 820 (Tex. App.—Waco 2006, no pet.).............. 16-18

*Thompson v. State*, 987 S.W.2d 64 (Tex. Crim. App. 1999)...................................21

*Torres v. State*, 103 S.W.3d 623 (Tex. App.—San Antonio 2003, no pet.)............13

*Washington v. State*, 525 S.W.2d 189 (Tex. Crim. App. 1975) ........................ 14-15

## Statutes

TEX. P. CODE §38.03 ................................................................................... 11-13, 15

TEX. P. CODE §38.04 ................................................................................ 14-15, 19, 22

TEX. P. CODE §38.05 ........................................................................................23

# STATEMENT OF THE CASE

*Nature of the Case:*    On March 14, 2011, the Williamson County Attorney filed an information alleging that Appellant committed the offense of Resisting Arrest on or about March 5, 2011. CR 6.

*Course of Proceedings:*    A bench trial ensued from August 31 to September 1, 2012. RR I 3-5. Appellant was tried for Resisting Arrest and Hindering Apprehension (trial court cause number 11-01763-2), which allegedly arose out of the same incident. RR II 7-8. Four witnesses testified for the State, and four witnesses testified for the defense. RR I 3-4. The trial court acquitted Appellant on the Hindering Apprehension charge, but it found him guilty of Resisting Arrest. RR IV 5-6, CR 46.

*Trial Court's Disposition:*    On October 3, 2012, the trial court imposed its judgment and sentence on the Resisting Arrest conviction. CR 46; RR IV 11-12. Appellant was sentenced to 90 days in jail, probated for 15 months, including six days in jail as a condition of probation. CR 5, 46. Appellant appealed to the Third Court of Appeals.

*Court of Appeals' Disposition:*    On August 28, 2014, the court of appeals affirmed the trial court's judgment in a 2-1 opinion. Appellant filed a motion for *en banc* reconsideration, which was denied on October 10, 2014. Appellant then filed a Petition for Discretionary Review, which this Court granted on March 18, 2015.

## ISSUE PRESENTED

When a person attempts to evade an unlawful arrest by refusing to comply with the officers' attempt to effectuate the arrest, while using no offensive force against the officers, has this person committed the crime of Resisting Arrest? RR III 56-83.

IN THE

COURT OF CRIMINAL APPEALS OF TEXAS

AUSTIN, TEXAS

| | | |
|---|---|---|
| WILLIAM BRYAN FINLEY, III | § | APPELLANT |
| vs. | § | |
| THE STATE OF TEXAS | § | APPELLEE |

FROM THE THIRD COURT OF APPEALS, AUSTIN, TEXAS
CASE NUMBER 03-13-00015-CR

ON APPEAL FROM THE COUNTY COURT AT LAW #2
WILLIAMSON COUNTY, TEXAS
CAUSE NUMBER 11-01764-2

**TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:**

COMES NOW Appellant William Bryan Finley, III, by and through his undersigned counsel, and offers this Brief on the Merits. This case presents a compelling scenario that highlights the statutory distinction between Evading and Resisting Arrest. Williamson County police officers attempted to unlawfully arrest Appellant, and without using any force against them, Appellant exercised his right to evade their violent, improper conduct. As a result, he was not guilty of Resisting

1

Arrest as a matter of law. In support of this argument, Appellant would respectfully show this Court the following:

## STATEMENT OF FACTS

Leander Police Department (LPD) Officer Ginger Fuller testified that she was working a Warrant Roundup on March 5, 2011. RR II 20. LPD's warrant officer, Scott Connor, had compiled the list of active municipal court warrants, and one of these warrants was for the arrest of Dennis Boyd for an outstanding speeding ticket. RR II 21. Boyd lived at Appellant's residence, and Appellant answered when Officer Fuller knocked on the door.[1] RR II 22-24. After Fuller explained that she had a warrant for Boyd's arrest, Appellant responded that Boyd was asleep inside the home, and he requested that Fuller produce a copy of the warrant. RR II 24-26. Officer Fuller deemed this request "very uncooperative," and she had an officer "pulled off the streets" in order to obtain a copy of the warrant to show to Appellant.[2] RR II 25-26. Appellant advised Fuller that once he received a copy of the warrant, he would permit the police to speak to Boyd. RR II 26. Due to LPD's classification of Appellant's behavior as "uncooperative," a backup officer,

---

[1] Boyd is now Appellant's son-in-law, and he was engaged to Appellant's daughter at the time of this incident. RR II 175, 204.

[2] LPD's contemptuous attitude toward Appellant permeated the officers' testimony throughout the trial. Of course, Fuller would not have had to "pull" an officer off the streets if she had simply brought a copy of the warrant with her on the initial approach to Appellant's residence.

Jarrett Rollins, arrived on scene. RR II 27.

Corporal John Lauden brought a copy of the warrant, and after reviewing it, Appellant determined that it contained deficiencies that made it invalid. RR II 26-27. Lauden's video of the incident demonstrates that despite Appellant's opinion about the warrant's invalidity, Appellant agreed to show the warrant to Boyd. RR V St.Ex.1 (Lauden, 8:49:06-8:49:11). Once inside his home, Appellant called 911 in order to inform the Williamson County Sheriff's Office that LPD might be serving a false warrant. RR II 28, 83-84. At this point, about 30 minutes had passed since Officer Fuller's initial arrival on scene. RR II 28.

Fuller testified that Officer Connor, the warrant officer, arrived, and he attempted to detain Appellant. RR II 30. At this point, Appellant began "pulling away" from Connor's attempt to place him in handcuffs. RR II 30. According to Fuller, they then went to the ground, and Appellant's hands were beneath his body as Connor attempted to handcuff him. RR II 30. Officer Rollins then tazed Appellant in the leg with a five-second drive-stun.[3] RR II 31. Fuller testified that Appellant continued "actively resisting," so Rollins drive-stunned him again. RR II 31. Following this exercise of force, Appellant submitted to the officers' attempt to handcuff him. RR II 31. During the commotion, Boyd came to the door, and the

---

[3] Drive-stun tazing means that the prongs are not employed; a drive-stun occurs in close range, as the tazer is directly applied to a part of the subject's body. RR II 32.

officers arrested him about a minute or two after the incident with Appellant had concluded. RR II 33. Although two pocketknives were discovered in Appellant's pocket following his arrest, there was nothing illegal about his possession of these items. RR II 32, 64.

On cross-examination, Officer Fuller testified that Appellant never lied to her during their initial encounter. RR II 40. Moreover, he did not attempt to hit, kick, punch, or bite any of the officers. RR II 64. In fact, Fuller unequivocally testified that Appellant did not use any force directly against the officers. RR II 65. She characterized Appellant's use of "force" as his conduct in preventing Officer Connor from pulling his arm behind his back. RR II 72. Fuller testified that she "would consider it force against allowing the officer to effect an arrest or detention." RR II 75.

Corporal John Lauden testified that he brought a copy of Boyd's warrant to Appellant's address. RR II 78. According to Lauden, within a minute of Connor's arrival, a scuffle occurred on Appellant's front porch. RR II 88. Lauden did not observe the incident because he was watching two females who came to the front door during the commotion. RR II 88.

Officer Scott Connor testified that he coordinated the Warrant Roundup on March 5, 2011. RR II 112-13. Based on information that he received from Corporal Lauden, Connor arrived on scene in order to detain Appellant for

4

Hindering Apprehension. RR II 114. Connor testified that he hoped that by doing so, Boyd would come outside of the residence. RR II 115. Connor testified that upon Appellant answering his knock at the door, Connor inquired whether Appellant's son was inside the residence. RR II 116-17. Appellant answered that his son was not inside, but his future son-in-law was there. RR II 117. Based on this response and information from both Lauden and Fuller, Connor testified that he "figured it was time to go ahead and put a stop to the games." RR II 117. Connor told Appellant to turn around and place his hands behind his back. RR II 117. Connor testified that Appellant clenched up, pulling his arm away. RR II 118. Because Connor could not fully control Appellant, Officer Rollins assisted him. RR II 118. They then pinned Appellant against the front door. RR II 118. Connor testified that Appellant "was actively pulling away and trying to get away from us." RR II 118. When Appellant failed to comply with Connor's order for him to get on the ground, Connor took him to the ground in order to gain control. RR II 118. Connor clarified that he took Appellant to the ground by using Connor's right leg to trip Appellant off of his balance. RR II 124. Connor further testified that the porch where the incident occurred is a confined space. RR II 124.

Once Appellant was on the ground, Officer Connor jammed his left knee into Appellant's lower back area while holding him down. RR II 124. Officer Rollins deployed his tazer by drive-stunning Appellant in the left calf. RR II 126.

5

Rollins then deployed a second drive-stun tazing cycle, and Appellant complied. RR II 127. Although pocketknives were found in Appellant's pocket following his arrest, Connor testified that he was unaware of these knives during the scuffle. RR II 128, 136-37.

On cross-examination, Officer Connor testified that he drafted a Probable Cause Affidavit on the basis of the alleged Resisting Arrest, and in this affidavit, he stated that the following actions constituted the act of Resisting: (1) Appellant tensing up his body, (2) Appellant refusing to put his hands behind his back, and (3) Appellant attempting to keep his hands underneath his body while he was on the ground. RR II 134, CR 6. Connor testified that Appellant did not hit him with his hands, slam against him with his body, or kick at him. RR II 138. Connor clarified his basis for the Resisting Arrest charge: "By not allowing me to place him in handcuffs, I would say that he was using force to resist me." RR II 139.

Officer Connor's in-car video reflects that upon Connor's arrival, Connor discussed the situation with the other officers on scene and seemed annoyed that Appellant had called the Williamson County Sheriff's Office about LPD serving a false warrant. RR V St.Ex.1 (Connor, at 9:03:46-9:03:56). When Appellant answered the door, Connor inquired whether Appellant's son was inside the residence. RR V St.Ex.1 (Connor, at 9:04:59). Appellant explained that his son was not inside, but his future son-in-law (*i.e.*, Boyd) was there. RR V St.Ex.1 (Connor,

6

at 9:05:00-9:05:04). Before Appellant completed his explanation, Connor told him to "turn around, put your hands behind your back." RR V St.Ex.1 (Connor, at 9:05:04-9:05:05). Connor then aggressively growled at Appellant to get on the ground. RR V St.Ex.1 (Connor, at 9:05:13-9:03:15). Appellant objected to the brutality of the situation: "What the hell's wrong with you?!" RR V St.Ex.1 (Connor, at 9:05:16). A few seconds later, an officer yelled out "tazer, tazer!" RR V St.Ex.1 (Connor, at 9:05:22).

LPD Officer Jarrett Rollins added further details about the incident. According to Rollins' testimony, when Officer Connor attempted to place Appellant in handcuffs, Appellant pulled away. RR II 154. Connor grabbed Appellant's left hand while Rollins attempted to grab his right hand, but Appellant pulled away. RR II 154. After Connor took Appellant to the ground, Rollins employed two separate drive-stun cycles with his tazer. RR II 155. The first cycle lasted about three seconds, while the second cycle lasted about five seconds. RR II 155. Rollins testified that he was not endangered by the alleged force used by Appellant. RR II 162. Appellant never lashed out at any of the officers, and he did not attempt to kick or hit the officers in any way. RR II 163, 165. In fact, Rollins testified that Appellant never used force against the officers at all. RR II 167.

Dennis Boyd testified that he lived at Appellant's residence on March 5, 2011, and he is now Appellant's son-in-law. RR II 174-75. He was asleep when

7

Appellant came into his bedroom to inform him that an officer was on her way with a copy of a warrant for his arrest, and he needed to get ready. RR II 178. Boyd testified that as he entered the living room after getting dressed, he heard a commotion on the porch and officers saying "tazer, tazer, tazer." RR II 179-80. Boyd further testified that Appellant never tried to prevent him from going outside to deal with the warrant. RR II 189.

Joel Lightford testified that he lives directly across the street from Appellant's residence. RR II 190. Lightford came outside of his front door shortly after 9:00 a.m. on March 5, 2011, when he noticed police cars. RR II 191-92. Lightford witnessed three male officers on the front porch of Appellant's residence. RR II 192. One officer was positioned to the left of Appellant, and the other two were on top of him. RR II 192. Lightford testified that the two officers who were on top of Appellant were aggressive and pulled tazers. RR II 193. One of the officers aggressively slammed Appellant's head against the ground over five times. RR II 194. Lightford did not witness Appellant hit, kick, push, or make any type of move towards the officers. RR II 194. Lightford further testified that he only knows Appellant as his neighbor, and they are not close personal friends. RR II 195.

Appellant's daughter, Patricia Boyd (hereafter "Patricia"), testified that she was living at Appellant's residence with Dennis Boyd at the time of this incident.

8

RR II 204. Initially, she was asleep in bed with Dennis when Appellant came into their bedroom to wake them up; Appellant came back a little bit later to show Dennis a piece of paper. RR II 214-15.

Patricia testified that she was about four feet away from the events on the porch. RR II 205. The commotion began about five seconds after Appellant went outside to talk to Officer Connor. RR II 205-06. Connor quickly turned Appellant around by placing both hands on his arm and shoulder, and then Connor slammed Appellant against the front door. RR II 206, 208. Appellant clasped his right hand onto his left wrist in front of his body. RR II 206. Another officer then assisted Connor, and they took Appellant to the ground, forcing him into a rock pillar in the process. RR II 208. Patricia testified that Appellant did not make any of the following actions towards the officers: (1) swinging, (2) kicking, or (3) pushing. RR II 209, 211. In fact, Appellant's hands were clasped together underneath his stomach while he was on the ground. RR II 209-10. Patricia testified that Officer Connor slammed Appellant's head into the concrete ground about three times with extreme force. RR II 210.

Appellant testified that when he first encountered Officer Fuller, she only had a piece of paper with a list of names and addresses. RR III 16. He asked her to obtain a copy of the warrant, and she volunteered to do so. RR III 16. Appellant proceeded inside to wake up Dennis Boyd. RR III 17. When Fuller returned with a

copy of the warrant about 15 minutes later, he told her that even though he believed the warrant was invalid, he would inform Boyd, who would then come outside. RR III 19-20. Appellant testified that he called 911 so that the "conservators of the peace" would come to the property to ensure that no laws were being violated. RR III 21. He then gave the copy of the warrant to Boyd, who intended to come outside. RR III 21. Moments later, Officer Connor knocked on his door. RR III 21. Appellant testified that he went outside, where four officers were waiting for him. RR III 22. Connor asked if Appellant's son was home, and before he could finish clarifying that Boyd was his future son-in-law, Officer Connor put both hands on Appellant's left arm. RR III 24. Appellant testified that he was afraid that Connor was trying to break his arm, so he clasped his right hand onto his left wrist in order to prevent Connor from forcing his left arm behind his back. RR III 24. Appellant had torn his right rotator cuff 20 years ago, and he did not want to injure his good arm. RR III 24, 26.

Appellant testified that he was spun around and slammed into the front door. RR III 26. The officers then slammed him into a limestone column on his porch. RR III 27. Appellant testified that he still has limestone marks on his coat from being slammed into the column. RR III 28.

Appellant testified that he had nowhere to retreat because he was confined by walls on three sides of the front porch, and the fourth side was the stairs going

down. RR III 28. After being taken to the ground, Appellant's arms were hooked together underneath his body. RR III 29. At one point, an officer forcefully grasped his left ear and used it has a handle in order to slam his head into the concrete three times while he was being tazed on the back left leg. RR III 30. Appellant testified that he did not kick, push, or pull away from the officers in a rough manner. RR III 29-30.

## SUMMARY OF THE ARGUMENT

The evidence was insufficient to support a guilty verdict on the Resisting Arrest charge. There was not one scintilla of evidence that Appellant used force against the officers, as required by TEX. P. CODE §38.03. Appellant's conduct constituted passive non-cooperation, and it presented no danger to the arresting officers. As a result, his conduct can be more aptly characterized as an attempt to evade the officers. Because the officers were unlawfully arresting him for Hindering Apprehension, Appellant had the right to engage in this conduct. Appellant never crossed the line from Evading to Resisting, and, as a result, he should have been acquitted of Resisting Arrest.

## ARGUMENT AND AUTHORITIES

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE TRIAL COURT'S VERDICT OF GUILTY ON THE RESISTING ARREST

11

CHARGE.

In assessing the sufficiency of the evidence, an appellate court reviews all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Ross v. State*, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004). Courts measure the sufficiency of the evidence against a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). When reviewing all of the evidence under the *Jackson* standard of review, the question is whether the factfinder's ultimate determination was a rational one. *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010).

### A. Evidence of non-cooperation is not sufficient to establish Resisting Arrest because the statute requires that the defendant use force against the arresting officer.

As a starting point in the analysis, a review of the Resisting Arrest statute is appropriate. TEX. P. CODE §38.03(a) defines the offense:

> A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.

Based on this statute, a defendant's use of force is not enough to meet the statutory definition; instead, the defendant must use force "against the peace officer."

12

In determining whether a defendant used force against an officer, courts distinguish between acts of "passive resistance" and acts that constitute actual force against an officer. *See Sartain v. State*, 228 S.W.3d 416, 425 (Tex. App.—Fort Worth 2007, pet. ref'd). For example, the act of flailing one's arms at an officer qualifies as force against an officer and can support a conviction for Resisting Arrest. *Id*. However, making an effort to avoid an officer's detention attempt would not qualify as Resisting Arrest unless the defendant used some force against the officer. *Compare id.* at 424, *with Torres v. State*, 103 S.W.3d 623, 627 (Tex. App.—San Antonio 2003, no pet.) (where defendant used the requisite force to support a Resisting Arrest charge when he raised his arm and knocked the officer's hand away to prevent the officer from handcuffing him).

This Court recently addressed the Resisting Arrest statute, as codified in TEX. P. CODE §38.03(a). *See Dobbs v. State*, 434 S.W.3d 166 (Tex. Crim. App. 2014). In that case, the defendant held a firearm as officers attempted to arrest him. *Dobbs*, 434 S.W.3d at 168. However, the defendant did not use or threaten to use the firearm against the officers; instead, he pointed the gun at his own temple. *Id*. The defendant then retreated inside his house, where he was tazed and fell to the floor. *Id*. After the defendant refused to comply with an officer's order to put his hands behind his back, he was again tazed. *Id*. At this point, the officers successively arrested the defendant and transported him to jail. *Id*.

13

In determining that the evidence was insufficient to support the jury's verdict convicting the *Dobbs* defendant of Resisting Arrest, this Court analyzed the statute and found that "the statutory language plainly requires a use of force directed 'against' the officer himself, not against his broader goal of effectuating an arrest." *Id*. at 171. This Court further explained:

> The Legislature's inclusion of the word "against" before the words "the peace officer" signifies that it intended to require proof that a defendant not only generally used force in the presence of the officer, but also that he specifically used force in the direction of and/or in contact with, or in hostility or opposition to, the officer. *See* [TEX. P. CODE §38.03(a)]. The statutory language thus requires not merely a showing that the actor engaged in some conduct designed to delay his arrest or to make his arrest more difficult, but rather that he have used some kind of force in opposition to, in the direction of, or in contact with the officer himself for the purpose of preventing an arrest. *See id.* Were we to interpret the phrase "against the peace officer" as encompassing any and all force employed for the purpose of opposing the officer's goal of effectuating an arrest, we would effectively render that phrase superfluous because the other statutory terms already require proof that the actor prevented or obstructed an arrest through his use of force.
>
> *Id*. at 171-72

In order for the evidence to be sufficient to support a Resisting Arrest conviction, the defendant must engage in conduct that is more than merely Evading. *See* TEX. P. CODE §38.04. "[The Resisting Arrest statute] applies only to resistance by the use of force. One who runs away or makes an effort to shake off an officer's detaining grip may be guilty of evading arrest under §38.04, but he is not responsible under this section." *Washington v. State*, 525 S.W.2d 189, 190

14

(Tex. Crim. App. 1975) (quoting Seth S. Searcy III & James R. Patterson, Practice Commentary, TEX. P. CODE §38.03).

The distinction between the Evading and Resisting statutes is helpful in demarcating the type of force that elevates conduct to Resisting Arrest. In enacting the Evading statute, the Legislature included a defense for people who evade an unlawful arrest. *See* TEX. P. CODE §38.04(a) (requiring that the criminal act of fleeing be from an officer attempting *lawfully* to arrest a person). Meanwhile, the Legislature clearly forbids a defendant accused of Resisting Arrest from asserting a defense that the arrest was unlawful. *See* TEX. P. CODE §38.03(b). Courts interpreting this distinction between the two statutes have found that there is no danger of injury to the officers in the act of Evading, while the act of Resisting presents a danger to an arresting officer. *See Raymond v. State*, 640 S.W.2d 678, 679 (Tex. App.—El Paso 1982, no pet.). [4]

As a result of the danger inherent in the act of Resisting Arrest, a defendant cannot claim that his use of force against the officer is excused by the unlawful nature of the arrest. Even in the context of an unlawful arrest, the Legislature sought to discourage people from endangering the safety of officers. However, a

---

[4] Appellant acknowledges that the El Paso Court of Appeals disavowed *Raymond* to the extent that it endorsed a toward/away distinction in analyzing the requisite force under the Resisting Arrest statute. *See Hopper v. State*, 86 S.W.3d 676, 679 (Tex. App.—El Paso 2002, no pet.). However, the *Raymond* court's analysis remains rooted in logic regarding the demarcation between Evading and Resisting in terms of the level of danger posed to the officer.

person can flee an unlawful arrest or detention because no endangering force is being used against the officer. Thus, the law allows a person to make efforts to avoid an unlawful arrest, with the boundary on this allowance being the point at which force is used against the officer. Up until that point, the defendant's conduct has not directly endangered the officer. *See Sheehan v. State*, 201 S.W.3d 820, 823 (Tex. App.—Waco 2006, no pet.) (employing the distinction between conduct that endangers an officer versus conduct that poses no such danger).

Several fact patterns are helpful in highlighting the difference between Evading and Resisting. In *Leos v. State*, arresting officers forced the defendant to the ground, but he continued to struggle by holding his hands to his stomach so that the officers could not handcuff him. 880 S.W.2d 180, 181 (Tex. App.—Corpus Christi 1994, no pet.). This defendant also attempted to crawl away on his shoulders and knees. *Id*. The court of appeals noted that while this defendant's conduct certainly suggested the use of force, it did not constitute Resisting Arrest because the force was not directed against the officers. *Id*. at 184. The court explained:

> The idea of violence directed specifically toward [the arresting officer] conflicts with this image of appellant crawling on his shoulders and knees with his hands clasped to his stomach. By attempting to crawl away, appellant invited prosecution for evading arrest. Merely trying to flee does not, however, involve sufficient force directed at the peace officer to sustain a conviction for resisting arrest. Nor is the peace officer the object of any force expended in

shaking off a detaining grip, which implies no less force than refusing to submit to the handcuffs.

*Id*. (citations omitted)

Likewise, in *Raymond,* the defendant's act of pulling his arm away from an officer's detaining grip did not qualify as force against the officer, and, thus, he could not be guilty of Resisting Arrest. 640 S.W.2d at 679; *see also Anderson v. State*, 707 S.W.2d 267, 270 (Tex. App.—Houston [1ˢᵗ Dist.] 1986, no pet.) (finding that "[p]ulling away from a police officer does not constitute a force against a police officer and is not sufficient to sustain a conviction for resisting arrest.").

*Sheehan* is also persuasive authority on this issue. *See* 201 S.W.3d 820 (Tex. App.—Waco 2006, no pet.). In that case, the defendant attempted to avoid an arrest by standing up, pulling his hands into his chest, and leaning towards his bunk bed. *Id*. at 821. Reviewing the relevant case law, the Waco Court of Appeals found that "[c]ourts have concluded that non-cooperation with an arrest is not an act of 'use of force against' a peace officer under the resisting arrest statute…" 201 S.W.3d at 822. The court then gave three examples of non-cooperation that do not qualify as Resisting Arrest: (1) shaking off an officer's detaining grip, (2) pulling away from an arresting officer after being arrested, and (3) crawling away from an arresting officer. *Id*. at 822-23. The court then stated in bold letters: **"Thus, refusing to cooperate with being arrested does not constitute resisting arrest by force."** *Id*. at 823 (emphasis in original).

17

In order for a defendant's non-cooperation to constitute Resisting Arrest, it must be combined with some element of force against the arresting officer. *Id*. For example, "evidence of non-cooperation combined with violent swings of the body and a forward movement causing the officer and the defendant to fall off a porch was sufficient to establish resisting arrest." *Id*. (citing *Bryant v. State*, 923 S.W.2d 199, 206 (Tex. App.—Waco 1996, pet. ref'd)).

Turning to the case at bar, the Third Court of Appeals' majority opinion focused on the fact that this Court in *Dobbs* cited *Pumphrey v. State*, a Texarkana court of appeals case in which the defendant's "forceful pulling away from the officer" constituted force exerted "at or in opposition to" the peace officer. *See Finley v. State*, 449 S.W.3d 145, 149 (Tex. App.—Austin 2014, pet. granted) (majority opinion); *see also Dobbs*, 434 S.W.3d at 172 (citing *Pumphrey v. State*, 245 S.W.3d 85, 89-90 (Tex. App.—Texarkana 2008, pet. ref'd)).

The majority's reliance on this *dicta* from the *Dobbs* opinion is misplaced for two reasons. First, the *Pumphrey* defendant did more than merely pull away, as she committed the following acts of offensive force against the officer: "jerking against, turning in circles to resist, twisting and squirming to thwart, and struggling against." *See* 245 S.W.3d at 89. These latter acts align the outcome of *Pumphrey* with the aforementioned cases, as this conduct can be deemed sufficient offensive force against the arresting officer to qualify as Resisting Arrest. The *Pumphrey*

18

defendant used a level of force against the officers that was more than a mere defensive, non-cooperative effort to evade arrest.

Second, as Chief Justice Jones pointed out in his dissenting opinion in the case at bar, categorizing this pulling behavior as Resisting Arrest would blur the line of demarcation between acts of force directed against the broader goal of effectuating an arrest (i.e., force that does not qualify as Resisting Arrest) and acts of force directed against the actual officer (i.e., force that qualifies as Resisting Arrest). *See Finley*, 449 S.W.3d at 152. Chief Justice Jones explained:

> Questions persist. For example, what does "in opposition to" mean? In its broadest sense, this phrase could include opposition to the officer's "broader goal of effectuating an arrest." If the phrase means less than that, how are the boundaries of that standard to be determined? Is the line of demarcation when the arrestee comes "in contact with the officer himself"? But if that is the defining threshold, does it include contact initiated by the officer?
>
> *Id.*

Once contact is initiated by an officer, how can a person use force to resist the broader goal of effectuating an arrest unless that person pulls away? The Legislature intended to permit this type of evasive behavior in certain circumstances, as Evading Arrest is a criminal offense only if the State proves that the person was being *lawfully* arrested. *See* TEX. P. CODE §38.04(a).

In dismissing the toward/away distinction as requiring an overly "metaphysical" analysis, the *Pumphrey* court erred by refusing to consider an

19

important element of the analysis: whether the alleged force endangers the arresting officer. *See* 245 S.W.3d at 90 n.5. In enacting the Evading and Resisting statutes, the Legislature clearly created a demarcation between defensive and offensive force. When a person's conduct in avoiding an arrest is defensive in nature (*i.e.*, Evading), the conduct is not criminal if the arrest was unlawful. Meanwhile, when the person's conduct in avoiding an arrest becomes offensive (*i.e.*, Resisting), the conduct is criminal regardless of the lawfulness of the arrest. An offensive/defensive distinction accords with Legislative intent because offensive conduct against an arresting officer is more likely to directly endanger that officer, while defensive efforts to avoid the arresting officer do not pose a direct danger. Moreover, this distinction between offensive and defensive force avoids the directional problems associated with the toward/away distinction that the *Pumphrey* court criticizes. *See id*. at 91. Also, employing this offensive/defensive distinction would not alter the results of the cited cases, including *Pumphrey*.

Moreover, Presiding Judge Keller's dissent (joined by Judge Meyers) in *Thompson v. State* demonstrates that the *Finley* majority should not have read so much into the *Dobbs*' opinion's *dicta* regarding evidence of "pulling away" being sufficient to support a Resisting Arrest conviction:

> [T]he Court of Appeals appears to have misconstrued a statute, namely Texas Penal Code § 38.03…Under the Court of Appeals' interpretation, it would appear that an accused "uses force against a peace officer" even though the accused's action merely consists of refusing to yield to a *peace officer's use of force against the accused.* That interpretation seems questionable, and in my mind, appears to confuse which actor is actually using force. I am skeptical of the proposition that the mere resistance to force necessarily constitutes the actual use of force. The practice commentary to § 38.03, which we quoted in *Washington,* appears to require more: "The section applies only to resistance by the use of force. One who runs away or makes an effort to shake off the officer's detaining grip may be guilty of evading arrest under § 38.04, but he is not responsible under this section." *Washington,* 525 S.W.2d at 190 (quoting practice commentary).
>
> *Thompson v. State*, 987 S.W.2d 64, 65 (Tex. Crim. App. 1999) (Keller, J., dissenting from refusal of PDR) (emphasis in original)

Considering that the *Dobbs* holding did not hinge on whether a "forceful pulling away" constitutes sufficient force to violate the Resisting Arrest statute, the court of appeals' majority opinion in the present case placed too much weight on the *dicta* to this effect.

In conclusion, this Court should hold that the mere act of pulling away from an officer does not qualify as Resisting Arrest when there is no evidence that the defendant directed any offensive force against the arresting officer.

> **B. Viewing the evidence in the light most favorable to the verdict, Appellant's non-cooperative conduct cannot be deemed Resisting Arrest because there was no evidence that he used force against the officers.**

The evidence at trial was unequivocal that Appellant did not use force against the arresting officers. Instead, Appellant defensively attempted to avoid an unlawful arrest for Hindering Apprehension, which he was entitled to do under the Evading Arrest statute. *See* TEX. P. CODE §38.04.

Officer Fuller testified that Appellant did not use any force directly against the officers. RR II 65. She characterized Appellant's use of "force" as his conduct in preventing Officer Connor from pulling his arm behind his back. RR II 72.

Officer Connor testified that Appellant's use of force was his conduct in "actively pulling away and trying to get away from us." RR II 118. Connor confirmed that Appellant did not hit him with his hands, slam against him with his body, or kick at him. RR II 138. Connor also unequivocally testified that he took Appellant to the ground. RR II 118, 124. Unlike *Bryant v. State*, there was no evidence that Appellant made any forceful movement that caused the officer and him to fall to the ground. *See* 923 S.W.2d at 206.

Officer Connor's Probable Cause Affidavit further revealed that the Leander Police Department misunderstood the law, as he stated that the following conduct constituted the requisite force for a Resisting Arrest charge: (1) Appellant tensing up his body, (2) Appellant refusing to put his hands behind his back, and (3) Appellant attempting to keep his hands underneath his body while he was on the ground. RR II 134, CR 6. The following testimony by Officer Connor encapsulates

22

the State's improper theory of guilt: "By not allowing me to place him in handcuffs, I would say that he was using force to resist me." RR II 139.

The State's only other witness to the alleged incident of Resisting Arrest was Officer Rollins.[5] Rollins testified that the alleged force by Appellant did not endanger him. RR II 162. Appellant never lashed out at any of the officers, and he did not attempt to kick or hit the officers in any way. RR II 163, 165. In fact, Rollins testified that Appellant never used force against the officers at all. RR II 167.

Appellant's conduct conformed exactly to the Legislature's intent in creating a defense for evading an unlawful arrest. Here, the State proceeded on a baseless charge of Hindering Apprehension. *See* TEX. P. CODE §38.05. Specifically, the State alleged that Appellant harbored or concealed Dennis Boyd with intent to hinder Boyd's arrest. RR II 7. The trial court properly acquitted Appellant on this charge, as there was neither evidence of an intent to hinder Boyd's arrest nor evidence of the alleged conduct of harboring or concealing. RR IV 5-6. Rather, the evidence was unequivocal that Appellant woke up Boyd, showed him a copy of the warrant, and informed him that he should get ready. RR II 178, 214-15; RR III 17, 21. The video of the incident confirms that Appellant told the officers that he

---

[5] Corporal John Lauden testified that he did not witness the conduct giving rise to this charge. RR II 88.

would inform Boyd about the warrant. RR V St.Ex.1 (Lauden, 8:49:06-8:49:11). In fact, Boyd came to the door soon after the outdoor commotion began, and he was arrested within a minute or two afterward. RR II 33. Because there was no basis for the Hindering Apprehension charge, Appellant had a right to evade Officer Connor's attempt to unlawfully arrest him for Hindering Apprehension. Of course, Appellant's attempt to flee was unsuccessful due to him being surrounded by officers on a confined porch where there was nowhere to retreat.[6] RR II 124, 160; RR III 28.

Because there was not one scintilla of evidence that Appellant used force against the arresting officers, no rational trier of fact could have found Appellant guilty of Resisting Arrest. As a result, the State's evidence was insufficient to establish that Appellant committed this offense.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant prays that this Court sustain his point of error, reverse the court of appeals' decision affirming the trial court's judgment of conviction, and render a judgment acquitting Appellant of Resisting Arrest.

---

[6] Even assuming a lawful arrest, Appellant's conduct would not constitute Resisting Arrest because he did not use force against the arresting officers.

24

Respectfully submitted,

/s/ Christopher M. Perri
CHRISTOPHER M. PERRI
Chris Perri Law
1504 West Ave.
Austin, Texas 78701
Tel. (512) 917-4378
Fax (512) 474-8252
chris@chrisperrilaw.com
State Bar No. 24047769
COUNSEL FOR APPELLANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Petition for Discretionary Review was electronically transmitted to the following counsel of record for Appellee, via the electronic filing manager, on this the 15th day of April, 2015.

James LaMarca
Assistant Williamson County Attorney
405 M.L.K., Suite 240
Georgetown, Texas 78626
jlamarca@wilco.org

Lisa McMinn
State Prosecuting Attorney
P.O. Box 13046
Capitol Station
Austin, Texas 78711
information@spa.texas.gov

/s/ Christopher M. Perri
Christopher M. Perri

25

## CERTIFICATE OF COMPLIANCE

This is to certify that the above Appellant's Brief on the Merits complies with the length requirements of TEX. R. APP. PROC. 9.4(i)(2)(B) because it contains 6,004 words, not including the parts of the Brief that are excepted under TEX. R. APP. PROC. 9.4(i)(1).

/s/ Christopher M. Perri_____
Christopher M. Perri